UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                Plaintiff,                    Case #15-CV-0887-FPG

v.

                                                   DECISION AND ORDER

LEE STROCK, et al.

                               Defendants.

_____

## INTRODUCTION

Plaintiff United States of America ("Plaintiff") acting on behalf of the Department of Defense, Department of the Air Force ("Air Force"), Department of the Army ("Army"), Department of Veterans' Affairs ("VA"), and the Small Business Administration ("SBA") commenced this action alleging violations of the False Claims Act ("FCA" or "Act"), 31 U.S.C. §3729 *et seq*., a common law fraud claim, and an unjust enrichment claim. ECF No.1.

Currently pending before the Court are Plaintiff's Motion for Leave to File Response to Defendants' Notices of Supplemental Authority ("Plaintiff's Motion") (ECF No. 35) and Defendants' Motions to Dismiss (ECF Nos. 13, 17, 18, 19) pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the following reasons, Plaintiff's Motion is GRANTED and Defendants' Motions to Dismiss are GRANTED.

## BACKGROUND

The following facts are derived from Plaintiff's Complaint and are assumed true for purposes of Defendants' Motions. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 147 (2d Cir. 2014).

## I.      Statutory and Regulatory Background

The Veterans Benefits Act ("VBA") and Small Business Act each present a framework designed to encourage contract awards to service-disabled veteran owned small businesses ("SDVOSBs"). ECF No. 1 at ¶¶ 16-25. To be eligible for special contracting programs reserved for SDVOSBs, the VBA, Small Business Act, and Federal Acquisition Regulation ("FAR") have each established similar qualifications: that a business must be at least 51% owned by one or more service-disabled veteran(s), and such service-disabled veteran(s) must control the business's day-to-day operations. *Id.* at ¶¶ 18-19, 22, 27. More broadly, regulations also require that the service-disabled veteran(s) control the "strategic policy setting" (as termed by the VBA and VA) or "long-term decision making" (as termed by the SBA regulations) of the business. *Id.* at ¶¶ 19, 23. Further, VA regulations place limits on the role that a non-veteran may play in the management of an SDVOSB firm. *Id.* at ¶ 20. These limits include barring a non-veteran's exercise of actual control, or the power to control, the service-disabled veteran participating in the program, and prohibiting a non-veteran's receipt of compensation which exceeds that of the business's highest officer (which must be the service-disabled veteran). *Id.*

The VBA and SBA authorize contracts to be set aside for SDVOSBs, with awards occurring on a "sole-source" basis (not through a competition) or through competitions in which participation is limited to veteran-owned firms. ECF No. 1 at ¶¶ 17, 21. SBA and FAR regulations require firms to represent that they qualify as an SDVOSB in their offer on a specific contract, and the SBA provides that any misrepresentation regarding SDVOSB status shall be subject to civil prosecution under the FCA. *Id.* at ¶¶ 24-25, 28. FAR regulations further require all contractors to complete representations and certifications (which include certifying that the business qualifies as an SDVOSB) in the Online Representation and Certification Application ("ORCA"). *Id.* at ¶ 29.

## II.     Parties

At the times relevant to this action, Defendants Lee Strock ("Strock") and Kenneth Carter ("Carter") were the owners and officers of an Erie County, New York based construction business, Defendant Strock Contracting, Inc. ("SCI"). *Id*. at ¶¶ 2, 10-12. Defendant Cynthia Ann Golde ("Golde") was an SCI employee and assisted Strock and Carter with SCI's operations. *Id*. at ¶ 13. Neither Strock nor Carter are service-disabled veterans and thus SCI did not qualify as an SDVOSB. *Id*. at ¶¶ 35-36, 50.

In order to gain access to, and profit from, contracts set aside for performance by qualified SDVOSBs, Defendants recruited Terry Anderson ("Anderson"), a New York State Parole Officer and service-disabled veteran, and developed a scheme to nominally appoint Anderson as the President and majority owner of a newly-formed company. ECF No. 1 at ¶¶ 31, 33. In or around 2006, Strock met with Anderson at least once to discuss the formation of an SDVOSB. *Id*. at ¶ 32. Veteran Enterprises Company, Inc. ("VECO") was subsequently formed, with Anderson as a "figurehead" President and 51% owner, Strock as Vice President and 30% owner, and Carter as Secretary, or in a similar officer position, and 19% owner. *Id*. at ¶¶ 31, 37. Golde was employed as VECO's office manager. *Id*. at ¶ 59. VECO's operations were setup in the same building as SCI—a building owned by either Strock or SCI. *Id*. at ¶¶ 2, 56-57.

## III.     VECO's Operations

Though Anderson was VECO's President and the majority owner of the company, Defendants permitted him to play only a limited role in managing VECO's operations. ECF No. 1 at ¶ 55. While serving as VECO's President, Anderson continued to work full-time as a New York State Parole Officer through 2013. *Id*. at ¶ 33. He did not have a key to enter the office building and Golde or other employees in the building had to grant him access when he wished to enter. *Id*. at ¶¶ 85-86. As VECO's President, Anderson's duties included the following: signing paperwork

(including payroll documents, tax returns, subcontractor agreements, blank checks, insurance renewals, and contract bid proposals) (*Id*. at ¶¶ 61, 66); attending "pre-award" and "post-award" meetings held by various government entities (*Id*. at ¶ 70); and occasionally traveling to VECO's work sites to perform inspections (ECF No. 1 at ¶ 71).

Anderson's role as President was limited in that: he did not have access to payroll records for VECO employees (*Id*. at ¶ 64); he was not given VECO's bank account statements (*Id*. at ¶ 65); he was not involved in VECO's bid submissions or responses to government Requests for Proposals, except for his role in signing bid proposals and other contract documents (*Id*. at ¶ 66); other than the tasks described above, he performed little or no supervision of VECO's work on government contracts and "performed little or no management of VECO's day-to-day operations" (*Id*. at ¶¶ 72-73, 78); he did not act as project manager for any of VECO's contracts (ECF No. 1 at ¶ 74); he did not prepare labor and material cost estimates for any of VECO's contracts (*Id*. at ¶¶ 75-76); he did not make personnel decisions (such as whether to hire or terminate employees), and he did not regularly participate in the employee interview process (*Id*. at ¶¶ 79-81); and he played no role in identifying, approving, or seeking bids from, VECO's subcontractors (*Id*. at ¶ 83). In fact, it was Strock, not Anderson, who controlled VECO's day-to-day and long-term business operations and Strock and Carter performed other key business functions that Anderson did not perform. *Id*. at ¶¶ 76-82, 87.

In addition to Anderson's limited role in managing VECO's operations, he received limited financial benefits from the company. Anderson was paid less than five percent of the profits that VECO earned and, despite his title and majority ownership, he was not the highest paid VECO employee. ECF No. 1 at ¶¶ 90-92. He also had the lowest spending limit of all authorized users of

the VECO company credit card and did not have the authority to draw cash from the account, despite being President of the company. *Id*. at ¶¶ 98-100.

## IV.    Plaintiff's Allegations

The gravamen of Plaintiff's Complaint is that (1) Defendants, while knowing that VECO did not qualify as an SDVOSB, falsely certified and represented that it did qualify in order to gain access to, and ultimately obtain, government contracts that were set-aside for award to qualified SDVOSBs; and (2) Defendants subsequently submitted claims for payment for the services performed under the awarded contracts.

### A.  Defendants' Misrepresentations of VECO's SDVOSB Status

One category of Plaintiff's allegations involves Defendants submissions of false statements certifying VECO's status as an SDVOSB. Broadly, Plaintiff alleges that, at various times between 2008 and 2013, Defendants falsely certified or verified that VECO qualified as an SDVOSB under the relevant statutory and regulatory frameworks, knowing that VECO did not meet such qualifications. *Id*. at ¶ 3. Plaintiff further alleges that, during this time period, VECO bid on, and was awarded, approximately $24 million in "contracts from the VA, [Army, and Air Force] that were set aside on a sole source basis for [SDVOSBs] or through competitions limited to [SDVOSBs]." ECF No. 1 at ¶¶ 2, 54, 108. More specifically, Plaintiff alleges as follows:

First, Plaintiff alleges that Defendants submitted an application to the VA to have VECO recognized as an SDVOSVB in which they falsely represented that VECO qualified as an SDVOSB, while knowing that it did not. *Id*. at ¶¶ 40-42, 49.

Second, Plaintiff alleges that "Strock directed or caused Golde or other employees of [SCI]" to enter information in various online databases, "including the Central Contractor Registration System and the Online Certifications and Representations Application (ORCA),

representing that VECO was an [SDVOSB]" while knowing that VECO did not meet the statutory and regulatory qualifications. *Id*. at ¶¶ 43, 45-46, 49. Plaintiff further alleges that "[t]he information in ORCA was periodically updated to state that VECO was an [SDVOSB]." *Id*. at ¶ 44.

Third, Plaintiff alleges that Strock and Carter caused Golde to submit false representations that VECO qualified as an SDVOSB under VA or SBA requirements when submitting bids on various contracts between 2008 and 2013. *Id*. at ¶¶ 108, 110-111. Plaintiff has listed these contracts on an Exhibit ("Exhibit A") attached to Plaintiff's Complaint. ECF No. 1-1. For ten of the contracts listed on Exhibit A, Plaintiff provides more specific allegations as representative examples. *See* ECF No.1 at ¶ 108; *see also id*. at ¶¶ 114-189. Included among the ten representative examples from Exhibit A are two Army contracts, one Air Force contract, and seven VA contracts. For each of these ten contracts, Plaintiff alleges that only companies that met the pertinent statutory and regulatory requirements were eligible to obtain the contract, and that, in each case, Defendants' bid falsely represented that VECO met these requirements. *See, e.g.*, *id*. at ¶¶ 115-16.

Fourth, Plaintiff alleges that Defendants submitted false, misleading, or incomplete information regarding Anderson's role in the company and work experience before joining VECO, Strock's role in the company, and SCI's affiliation with VECO. *Id*. at ¶¶ 101-105. This information was submitted in response to a 2011 VA inquiry into whether VECO qualified as an SDVOSB. *Id*. at ¶ 101. Plaintiff further alleges that Strock was ultimately responsible for determining the information submitted in response to the VA's inquiry, and that the VA determined that VECO qualified as an SDVOSB as a result of the information submitted. ECF No. 1 at ¶¶ 106-07.

### B. Defendants' Submission of Claims for Payment

Another category of allegations involves Defendants' submission of claims for payment on behalf of VECO to the VA, Army, and Air Force. Plaintiff alleges that Strock and Carter caused

Golde "to submit claims, invoices or requests for payment" related to the 98 contracts identified on Exhibit A. *Id*. at ¶ 111; ECF No. 1-1 at 1-6. Plaintiff further alleges that "VECO submitted multiple invoices or requests for payment" "[o]n many of the contracts listed in Exhibit A." ECF No.1 at ¶ 113. With respect to each of the ten representative examples from Exhibit A for which Plaintiff provides more specific allegations, Plaintiff alleges that "[m]ultiple invoice or claims for payment" were in fact submitted for each of those contracts. *See, e.g.*, *id*. at ¶ 119.

## V.      Procedural History

Plaintiff commenced this action with the filing of its Complaint (ECF No. 1) on October 7, 2015. Defendants each filed a Motion to Dismiss Plaintiff's Complaint on January 28, 2016 (ECF Nos. 13, 17-19) and Plaintiff responded in opposition to those motions on March 3, 2016 (ECF No. 23). On March 18, Defendants submitted replies to Plaintiff's response (ECF Nos. 27-30). Thereafter, Plaintiff and Defendants Strock, SCI, and Carter each filed a Notice of Supplemental Authority (ECF Nos. 31-34, respectively). On July 28, 2016, Plaintiff filed a Motion for Leave to File Response to Notices of Supplemental Authority (ECF No. 35) along with a "Response to Defendants' Notices of Supplemental Authority Submitted Pending Requested Approval from the Court" (ECF No. 35-3). Defendants Strock and Carter filed Memoranda in Opposition to Plaintiff's Motion for Leave (ECF Nos. 36-37) asserting that Plaintiff's Motion should be denied and that the attached Response submitted pending Court approval should be stricken from the record. ECF No. 36 at 6; ECF No. 37 at 1.

## LEGAL STANDARDS

## I.      12(b)(6) Standard

Under Rule 12(b)(6) of the FRCP, when a party moves to dismiss a complaint for failure to state a claim upon which relief can be granted, "the Court must accept all factual allegations in

the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Kane* ex rel. *United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015) (citing *Koch v. Christie's Intern., PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). However, "this principle is inapplicable to legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 285 (E.D.N.Y. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted) (alterations omitted).

Ultimately, "[a] complaint must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). This facial plausibility requirement is met when a complaint includes "factual content sufficient to allow a court to reasonably infer the defendant's liability." *United States* ex rel. *Coyne v. Amgen, Inc.*, 229 F. Supp. 3d 159, 168 (E.D.N.Y. 2017) (citing *Twombly*, 550 U.S. at 556).

> Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (internal quotation marks omitted) (citation omitted).

## II.     Rule 9(b) Standard & the FCA

"It is self-evident that the FCA is an anti-fraud statute" and "claims brought under the FCA fall within the express scope of Rule 9(b)." *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995) (citing Fed. R. Civ. P. 9(b)). Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *United States* ex rel.

*Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "That ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States* ex rel. *Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citations and internal quotation marks omitted). For the various subsections of the FCA, the "circumstances" constituting fraud depend upon the elements of the applicable subsection. *United States* ex rel. *Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

Ultimately, the sufficiency of a complaint under the Rule 9(b) standard "depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d at 285 (citing *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013)) (citations omitted).

## **DISCUSSION**

### I.     **Plaintiff's Motion**

Pending before the Court is Plaintiff's Motion (ECF No. 35) seeking leave to file a response to Defendants Strock, Carter, and SCI's Notices of Supplemental Authority (ECF Nos. 32-34). Along with its motion, Plaintiff filed a "Response to Defendants' Notices of Supplemental Authority Submitted Pending Requested Approval from the Court" ("Plaintiff's Response"; ECF No. 35-3), requesting the Court consider the document "[t]o the extent that the Court grants this motion." ECF No. 35-3 at 1. Plaintiff asserts there is "good cause" for leave because (1)

Defendants have raised factual arguments that go outside of the Complaint, which is improper in a Rule 12(b)(6) motion to dismiss and (2) Plaintiff seeks to respond to new arguments Defendants have raised under the Supreme Court's decision in *Universal Health Services, Inc. v. United States ex rel. Escobar* ("*Escobar*"). ECF No. 35 at 1.

Defendants Strock and Carter each filed a Memorandum in Opposition to Plaintiff's Motion (ECF Nos. 36-37) asserting that the motion should be denied because Plaintiff already had an opportunity to address the new authority at issue in Plaintiff's own Notice of Supplemental Authority (ECF No. 31). ECF No. 36 at 2; ECF No. 37 at 1. Furthermore, Defendants Strock and Carter request that the Court strike Plaintiff's Response because it is an "improper sur-reply." *Id.*

In this Circuit, arguments raised for the first time in papers submitted after the parties' initial briefing "need not be considered." *Mayer v. Neurological Surgery, P.C.*, 15-CV-0864(DRH)(ARL), 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016) (citing *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007)) (citation omitted). However, "the Court may consider new arguments as long as the opposing party has a fair opportunity to respond." *Wilmington Savs. Fund Soc'y, FSB v. Universitas Educ., LLC*, 164 F. Supp. 3d 273, 292 (D. Conn. 2016) (citation omitted). The core argument raised in Defendants' Notices of Supplemental Authority is that Plaintiff has failed to adequately allege materiality as required for FCA claims under *Escobar*. *See* ECF No. 35-3 at 1; *see also* ECF Nos. 32-34. Though Defendants are correct that Plaintiff had an opportunity to address *Escobar* in its Notice of Supplemental Authority (ECF No. 31), in order to ensure that Plaintiff has been afforded a fair opportunity to respond to all legal arguments presented in Defendants' Notices of Supplemental Authority (which were filed after Plaintiff's Notice), the Court grants Plaintiff's Motion and Plaintiff's Response has been considered in the Court's analysis below. *See BSC, LLC v. Leidos, Inc.*, 91 F. Supp. 3d

319, 325 n. 6 (N.D.N.Y. 2015) (finding plaintiff suffered no unfairness in the Court considering an argument raised for the first time in defendant's reply where "the Court permitted [p]laintiff to file supplemental briefing addressing the . . . issue"). Plaintiff's Motion is GRANTED.[1]

## II.     False Claims Act Violations

"The FCA was enacted in 1863 to combat fraud by defense contractors during the Civil War." *Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 43 (2d Cir. 2016) ("*Bishop I*") (citation omitted), *vacated on other grounds*, 137 S. Ct. 1067 (2017). Though it has been amended numerous times, the Act's "focus remains on those who present or directly induce the submission of false or fraudulent claims[,]" and the Act "imposes significant penalties on those who defraud the Government." *Escobar*, 136 S. Ct. at 1995-96.

Plaintiff's Complaint alleges that Defendants violated the FCA by (i) presenting, or causing to be presented, false claims (in violation of 31 U.S.C. § 3729(a)(1), and, as amended, 31 U.S.C. § 3729(a)(1)(A)); (ii) making or using a false record or statement (in violation of 31 U.S.C. § 3729(a)(2), and, as amended, 31 U.S.C. § 3729(a)(1)(B)); and (iii) conspiring to submit or cause to be submitted a false claim or to make or use a false record or statement (in violation of 31 U.S.C. § 3729(a)(3), and, as amended, 31 U.S.C. § 3729(a)(1)(C)).  ECF. No 1 at ¶¶ 190-203. Plaintiff alleges these violations occurred from 2008 to 2013.[2]

---

[1]     With respect to Plaintiff's assertion that Defendants' Notices of Supplemental Authority inject new facts outside the scope of the facts in the Complaint, the Court will not consider such facts. *See Festa v. Local 3 Intern. Broth. Of Elec. Workers*, 905 F.2d 35, 37-38 (2d Cir. 1990) (stating that "Rule 12(b)(6) provides that to the extent that the court decides to consider matters outside of the complaint in ruling on a motion pursuant to Rule (12)(b)(6), the motion shall be treated as one for summary judgment"); *see also Ferrante v. Capitol Reg'l Educ. Council*, 3:14-cv-00392-VLB, 2015 WL 1445206, at *6 (D. Conn. 2015) (finding defendant's introduction of new arguments in its reply brief to be "an impermissible attempt to introduce facts into defendant's motion to dismiss" where plaintiff's complaint did not "allege or infer" those facts). In adjudicating a Rule 12(b)(6) motion to dismiss, the Court generally reviews only a "narrow universe of materials" comprised of "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel*, 820 F.3d at 559.

[2]     During that time period, the provisions of the FCA underlying Plaintiff's claims were amended in the Fraud Enforcement and Recovery Act of 2009 ("FERA"), and Plaintiff's Complaint cites both versions of the statute.

### A. Elements of Counts I and II (§ 3729(a)(1)(A), (B))

Subsections (A) and (B) of the FCA impose liability for the presentation of false claims for payment and for making or using a false record material to a false claim for payment. "Courts generally treat these two provisions together, as their elements overlap significantly." *United States* ex rel. *Hussain v. CDM Smith, Inc.*, 14-CV-9107 (JPO), 2017 WL 4326523, at *8 (S.D.N.Y. Sept. 27, 2017) (citations omitted).

Under subsection (A), "the FCA imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]" *Chorches*, 865 F.3d at 81 (quoting 31 U.S.C. § 3729(a)(1)(A)) (internal quotation marks omitted). To state a claim under subsection (A), a plaintiff must show that the defendant "(1) made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States* ex rel. *Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other* grounds, 563 U.S. 401 (2011). Additionally, an alleged "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]."

---

Plaintiff's claims arise under FCA subsections (a)(1)(A) (pre-FERA (a)(1)), (a)(1)(B) (pre-FERA (a)(2)), (a)(1)(C) (pre-FERA (a)(3)). FERA's amendments to (a)(1)(A) and (a)(1)(C) were prospective only. *See Kester*, 23 F. Supp. 3d at 251 (citing *United States* ex rel. *Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 811 n. 36 (S.D.N.Y. 2010)). Therefore, the pre-amendment subsections apply to any acts committed prior to FERA's effective date of May 20, 2009, and the post-amendment subsections apply to acts committed after that date. Of the 147 contracts listed on Exhibit A of Plaintiff's Complaint, 31 were awarded prior to May 20, 2009. Though drawing this distinction for the sake of clarity, the Court's analysis below is not affected by these amendments. *See United States v. Catholic Health Sys. of Long Island, Inc.*, 12-CV-4425 (MKB), 2017 WL 1239589, at *9 (E.D.N.Y. March 31, 2017) ("Although the wording of the sections changed slightly, there was no substantive difference between the 1994 version and the 2009 version of the statute for these sections.") (citing *Bishop I*, 823 F.3d at 43 n. 1).

As for subsection (a)(1)(B), the FERA amendments are applied "to all legal claims pending before a court on or after June 7, 2008. *Kester*, 23 F. Supp. 3d at 251. Since this action was commenced on October 7, 2015, the FERA amendments apply to the Plaintiff's claims under (a)(1)(B). All references to the FCA below refer to the post-FERA amended FCA subsections, unless otherwise noted.

*Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 107 (2d Cir. 2017) ("*Bishop II*") (quoting *Escobar*, 136 S. Ct. at 2002).

Subsection (B) imposes liability on anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Chorches*, 865 F.3d at 81. To state a claim under subsection (B), "a plaintiff must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." *Hussain*, 14-CV-9107(JPO), 2017 WL 4326523, at *8 (quoting *Kester*, 23 F. Supp. 3d at 252).

### 1. Falsity or Fraudulence

The elements of both subsections (A) and (B) include a claim for payment that is "false or fraudulent." "False or fraudulent" is not defined in the FCA. *Mikes v. Straus*, 274 F.3d 687, 696 (2d Cir. 2001), *abrogated on other grounds*, 136 S. Ct. 1989. "However, the juxtaposition of the word 'false' with the word 'fraudulent,' plus the meanings of the words comprising the phrase 'false claim,' suggest an improper claim is aimed at extracting money the government otherwise would not have paid." *United States* ex rel. *Feldman v. Van Gorp*, 674 F. Supp. 2d 475, 479 (S.D.N.Y. 2009) (citing *Mikes*, 274 F.3d at 696) (some internal quotations omitted). Claims for payment may be deemed false or fraudulent based on several theories relevant to this case.

First, a claim for payment is factually false when it is "based upon an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *United States v. Huron Consulting Group, Inc.*, 929 F. Supp. 2d 245, 252 (S.D.N.Y. 2013) (citing *Mikes*, 274 F.3d at 697) (internal quotation marks omitted). The quintessential factually false claim for payment is when a contractor bills the military for a shipment of guns but

delivers a box of sawdust. *Bishop I*, 823 F.3d at 43. In such a case, the contractor billed for goods—the guns—but did not provide them, and the bills, or claims for payment, are thus factually false.

Claims for payment may also be found false or fraudulent based on legal falsity. A claim for payment is legally false where "a party certifies compliance with a statute or regulation as a condition to governmental payment, but is not actually compliant." *Id.* at 43 (citing *Mikes*, 274 F.3d at 697) (internal quotation marks omitted). The Second Circuit has recognized two subsets of legally false certifications: (1) a claim for payment that is legally false based on an implied false certification and (2) a claim for payment that is legally false based on an express false certification. *See Kirk*, 601 F.3d at 114 (citing *Mikes*, 274 F.3d at 698, 700).

"An implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules . . . ." *Mikes*, 274 F.3d at 699. In *Escobar*, the Supreme Court set forth a new standard for alleged FCA violations brought on an implied false certification theory:

> [T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.

*Escobar*, 136 S. Ct. at 2001.

To establish that a claim for payment is false or fraudulent based on an express false certification, the Second Circuit held in *Mikes v. Straus* ("*Mikes*") that the plaintiff must allege that the defendant submitted a claim that falsely certifies compliance with a *particular* statute, regulation or contractual term, where compliance is a prerequisite to payment." *Bishop I*, 823 F.3d at 45 (emphasis in original) (internal quotation marks omitted) (alterations omitted) (citing *Mikes*, 274 F.3d at 698). However, the Second Circuit

recently held that *Escobar* "abrogated *Mikes's* particularity requirement for express false certification claims." *Bishop II*, 870 F.3d at 106 (citations omitted). Thus, post-*Escobar* and –*Bishop II*, "particularity" is no longer required for express false certifications.

Finally, claims for payment may also be false or fraudulent based on a fraudulent inducement theory. *See Wells Fargo Bank, N.A.*, 972 F. Supp. 2d at 623 (collecting cases). This theory applies where "the defendant made fraudulent representations to the government to induce it to enter a contract, and although no false statements were made at the time of the actual claims for payment, because the claims derived from the original fraudulent misrepresentation, they too are actionable false claims." *United States* ex rel. *Lacey v. Visiting Nurse Serv. of New York*, 14-cv-5739 (AJN), 2017 WL 5515860, at *6 (S.D.N.Y. Sept. 26, 2017) (citing *Feldman*, 697 F.3d at 91) (internal quotation marks omitted). To plausibly plead an FCA cause of action based on a fraudulent inducement theory, a plaintiff "must demonstrate that the defendant made fraudulent statements to the government and that this fraudulent conduct induced the government to enter into some form of contract with the defendant." *Lacey*, 14-cv-5739 (AJN), 2017 WL 5515860, at *6 (citation omitted).

### 2. Materiality Standard

*Escobar* "set out a materiality standard for FCA claims" under which a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the FCA." *Bishop II*, 870 F.3d at 106-07 (alterations omitted). "Specifically, to be material the government must have made the payment as a result of the defendant's alleged misconduct." *Coyne v. Amgen, Inc.*, 17-1522-cv, 2017 WL 6459267,

at *2 (2d Cir. 2017) (summary order) (citing *United States* ex rel. *Ge v. Takeda Pharm. Co. Ltd.*, 737 F.3d 116, 124 (1st Cir. 2013). This standard is "familiar and rigorous." *Bishop II*, 870 F.3d at 107.

> [W]hen evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Escobar*, 136 S. Ct. at 2003-04.

### B. Whether Plaintiff has Adequately Alleged FCA Materiality

The thrust of Plaintiff's FCA claims under subsections (A) and (B) (Counts I and II) is that the Defendants violated the FCA when they falsely certified or verified on several occasions that VECO met the relevant statutory and regulatory requirements to qualify as an SDVOSB when it in fact did not, fraudulently induced Plaintiff to enter into contracts with VECO through those false representations, and submitted payment claims for work performed. Defendants argue, *inter alia*, that Plaintiff's FCA claims brought under Counts I and II fail pursuant to Rules 12(b)(6) and 9(b) of the FRCP because Plaintiff has not adequately pleaded that Defendants' alleged false misrepresentations were material to Plaintiff's payment decision. *See* ECF Nos. 27 at 6; 32-34. For all of the reasons set forth below, the Court finds that Plaintiff has failed to adequately allege FCA materiality.

Plaintiff's Complaint cites numerous VA, Small Business Act, and FAR statutory and regulatory provisions that outline the goals of SDVOSB special contracting programs and provide

criteria for when a company qualifies as an SDVOSB, and thus qualifies for participation in these contracting programs. ECF No. 1 at 5-8. Notably, companies must meet the following requirements to participate in SDVOSB special contracting programs: a business must be at least 51% owned by one or more service-disabled veteran(s) to qualify as an SDVOSB; the service-disabled veteran(s) owner must control the business's day-to-day operations; the service-disabled veteran(s) must control the "strategic policy setting" or "long-term decision making" of the business; any non-veterans at the company may not exercise actual control, or the power to control, the service-disabled veteran participating in the program; and non-veteran's may not receive compensation which exceeds that of the service-disabled veteran serving as the company's highest officer. *Id*.

Defendants' allegedly false representations that VECO met these requirements were made at several points from 2008 to 2013. First, the regulations governing SDVOSB contracting require prospective bid-awardees to represent that they qualify as an SDVOSB in their offer on a contract.[3] *Id*. at ¶¶ 24-25, 28. Second, the regulations require all contractors to complete certain representations and certifications (which include certifying that the business qualifies as an SDVOSB) in the ORCA system. *Id*. at ¶¶ 43, 45-46, 49. Defendants submitted this information "[p]rior to 2008" and it was "periodically updated." *Id.* at 44. The representations on these online systems "state[d] that VECO was an SDVO small business." *Id*. Finally, Defendants submitted information that "was either false, misleading or did not fully convey all material facts" in response to a 2011 VA inquiry into whether VECO was compliant with SDVOSB requirements. *Id*. at 101-

---

[3]    For example, FAR section 52.219-1(c)(7) required Defendants to make the following representation: "The offeror represents as part of its offer that it __ is, __ is not a service-disabled veteran-owned small business concern." ECF No. 1 at ¶ 28.

07. After reviewing these submissions, "the VA determined that VECO was eligible as an SDVO small business." *Id*. at 107.

The cited statutory and regulatory provisions, required online certifications, and the VA's 2011 inquiry all addressed VECO's eligibility *to participate* in the contracting programs, making no mention of, or connection to Plaintiff's decision *to pay* VECO for work performed under the contracts at issue. Without more, these provisions provide little support for the notion that VECO's SDVOSB status was material to Plaintiff's decision to pay VECO.

Under *Escobar*, whether the government has deemed compliance with statutory, regulatory, or contractual requirements as a condition of payment is relevant, but not dispositive, when evaluating FCA materiality. *See Escobar*, 136 S. Ct. at 2001. In this case, Plaintiff has not alleged that it expressly conditioned payment to VECO on VECO's compliance with SDVOSB contracting requirements. While this is not dispositive of the materiality inquiry, it is nonetheless relevant and tends to suggest that VECO's SDVOSB status was not material to Plaintiff's payment decisions.

Another factor to consider under *Escobar* is "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id*. at 2003. Here, Plaintiff's Complaint lacks any such allegations. Plaintiff does allege several times that Defendants certified or verified that VECO met SDVOSB contracting requirements, "with knowledge" that VECO did not meet such requirements. But that is different than alleging that Defendants had knowledge that Plaintiff, as a matter of course, refuses to pay SDVOSBs because of non-compliance with SDVOSB contracting requirements. The latter would tend to establish that compliance is material to Plaintiff's payment decision, while the former goes to the Act's scienter requirement.

*Escobar* also provides that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id*. It is unclear from the four corners of Plaintiff's Complaint whether Plaintiff continued to pay Defendants in full while knowing of VECO's failure to qualify as an SDVOSB. In 2011, the VA investigated VECO's SDVOSB eligibility and determined that VECO was eligible based on Defendants' allegedly false submissions. *Id*. However, the Complaint provides no information as to whether payment to VECO ceased during this inquiry. The inquiry itself does show that VECO's SDVOSB status was important enough to Plaintiff to warrant some level of investigation, but the Complaint fails to make any allegations that connect the investigation into VECO's status to Plaintiff's payment determination. Nor does it provide any information regarding whether VECO could have been terminated from the contracts it had already been awarded—thus barring receipt of claims for payment on active contracts.

Plaintiff argues that it has "clearly alleg[ed] materiality" because "[t]he Complaint repeatedly allege[s] that had the government known that VECO did not, in fact, meet all of the applicable requirements to be an SDVO small business, it would not have awarded these contracts[.]" ECF No. 35-3 at 3 (citing ECF No.1 at ¶¶ 112, 118, 125, 132, 139, 146, 153, 160, 167, 174). Accepting these factual allegations as true, as the Court is required to do when adjudicating a motion to dismiss, they merely assert that the alleged false certifications or verifications of compliance with SDVOSB status requirements were material to Plaintiff's decision to award the contracts—and they, nor any of the other allegations in the Complaint, connect the alleged falsities to Plaintiff's decisions to pay VECO's claims for work performed under those contracts.

In theory, the fact that a company violated qualifications necessary for participation in special contracting programs could be material to the government's decision to pay that company for work performed under awarded contracts. *See Escobar*, 136 S. Ct. at 2002 (rejecting the Government's theory of liability because it failed to recognize that "misrepresenting compliance with a condition of eligibility to even participate in a federal program" could expose a defendant to FCA liability); *see also Lacey*, 14-cv-5739 (AJN), 2017 WL 5515860, at *9-*10 (finding plaintiff adequately pleaded materiality under *Escobar* in part because plaintiff cited "numerous cases" in which plaintiff terminated home health agencies for failure to comply with program standards, and "by extension" those terminated agencies were no longer entitled to payment of their claims). But here, Plaintiff's Complaint fails to "present concrete allegations from which the court may draw the reasonable inference" that Defendants' alleged falsities "caused [Plaintiff] to make the reimbursement decision." *See Coyne v. Amgen, Inc.*, 17-1522-cv, 2017 WL 6459267, at *2 (2d Cir. 2017) (summary order) (citing *Chorches*, 865 F.3d at 78). Therefore, Plaintiff has failed to adequately allege materiality.

## C. Whether the Materiality Standard Applies to all Plaintiff's Claims under Counts I and II

Plaintiff asserts that it has adequately pleaded the falsity or fraudulence of Defendants' certifications and verifications under Counts I and II based on theories of express false certification, implied false certification, and fraudulent inducement.[4] *See generally* ECF Nos. 23,

---

[4]     Defendants assert that Plaintiff fails to state a viable FCA cause of action under a theory of factual falsity. ECF No. 13-2 at 14; 18-2 at 7; 19-1 at ¶ 10(b). Plaintiff seemingly concedes this point and does not counter this argument in its Opposition Brief, or any of its subsequent submissions. *See generally* ECF No. 23. In this case, Plaintiff has not alleged that Defendants failed to provide the contracted for construction services, which included road repair and sprinkler and ceiling repair services, nor has Plaintiff alleged that Defendants provided an incorrect description of these services. Therefore, Plaintiff's Complaint fails to establish the element of a "false or fraudulent" claim for payment on a theory of factual falsity and Plaintiff's causes of action under 3729(a)(1)(A) and (B) fail under such a theory. *See New York* ex rel. *Khurana v. Spherion Corp.*, No. 15-cv-6605, 2016 WL 6652735, at *15 (S.D.N.Y. Nov.

35. *Escobar*, which was an implied false certification case, did not clarify whether the materiality standard applies to all causes of action brought under § 3729(a)(1)(A) or only causes of action brought specifically on an implied false certification theory. *See* John H. Krause, *Reflections on Certification, Interpretation, and the Quest for Fraud that "Counts" Under the False Claims Act*, 2017 U. Ill. L. Rev. 1811, 1835-36 (2017).

Since *Escobar*, there is uncertainty as to whether the decision's materiality standard applies to all FCA claims brought under § 3729(a)(1)(A), only a subset of claims (*i.e.*, it applies to theories of legal falsity but not factual falsity), or only those claims relying on an implied certification theory. *See United States* ex rel. *Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902-07 (9th Cir. 2017) (applying *Escobar's* materiality standard to the theories of factual falsity, implied false certification, and "promissory fraud" or fraudulent inducement); *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7-8 (1st Cir. 2016) (applying *Escobar's* materiality standard to a fraudulent inducement claim); *United States* ex rel. *Miller v. Weston Educ., Inc.*, 840 F.3d 494, 500 (8th Cir. 2016) (applying *Escobar's* materiality standard to an FCA fraudulent inducement claim); *Lacey*, 14-cv-5739 (AJN), 2017 WL 5515860, at *6-*11 (S.D.N.Y. Sept. 26, 2017) (stating that *Escobar's* materiality standard applies to all legally false claims, but not applying the materiality standard to a factually false claim that was "based on fraudulent inducement."); *United States* ex rel. *Forcier v. Comput. Sciences Corp.*, 12 Civ. 1750 (DAB), 2017 WL 3616665, at *7 (S.D.N.Y. Aug. 10, 2017) (stating that "[w]hether asserted on a theory of factual falsity or legal falsity, a false claim must have influenced the government's decision to pay" or "[p]ut differently, the misrepresentation must have been material"); *United States v. Catholic Health Sys.*, 12-CV-4425 MKB), 2017 WL

---

10, 2016) (finding factual falsity theory failed where plaintiff alleged neither that defendant actually failed to provide the services for which payment was sought, nor that plaintiff provided an incorrect description of those services).

1239589, at *21 (E.D.N.Y. March 31, 2017) (stating that Escobar "adopted the materiality test for implied-false-certification claims"); *United States* ex rel. *Scharff v. Camelot Counseling*, 13-cv-3791 (PKC), 2016 WL 5416494, at *3 (S.D.N.Y. Sept. 28, 2016) (stating that *Escobar's* materiality standard applies to legally false claims "that falsely certify compliance with a regulation or a statute").

The Second Circuit has not explicitly addressed this issue, but its post-*Escobar* decision in *Bishop II* suggests that the standard applies to *all* misrepresentations of compliance with statutory, regulatory or contractual requirements brought under the Act—not only those brought under an implied certification theory. In *Bishop II*, the Second Circuit stated that "*Escobar* set out a materiality standard for FCA claims[,]" divorced from any mention that the requirement applies only to specific theories of falsity. *Bishop II*, 870 F.3d at 106. In addition, the *Bishop II* Court found that "although Escobar was an implied certification case, it also abrogated *Mikes's* particularity requirement for express false certification claims." *Id.* at 106. The *Bishop II* Court went on to explain, citing *Escobar*, that the prophylactic purpose of this express false certification requirement could "be effectively addressed through strict enforcement of the [FCA]'s materiality and scienter requirements." *Id.* at 107. This clearly suggests that *Escobar's* materiality requirement applies not only to implied false certification claims, but to express false certification claims as well. If the *Bishop II* Court had intended *Escobar's* materiality requirement to be limited to implied certification claims it would not have reasoned that *Mikes's* particularity requirement was no longer necessary because *Escobar's* materiality requirement would serve the purpose for which the particularity requirement had been established. Though *Escobar's* holding with respect to materiality altered the FCA landscape,[5] the concept that an alleged falsity or fraudulence must bear

---

[5] In *Escobar*, the Court noted that "[instead of adopting a circumscribed view of what it means for a claim to be false or fraudulent," concerns about fair notice and open-ended liability "can be effectively addressed through strict

some relationship to the government's disbursement decision is hardly novel in FCA law in this Circuit. *See Kirk*, 601 F.3d at 114 ("Because the language of the FCA plainly links the wrongful activity to the government's decision to pay, the statute does not encompass those instances of regulatory noncompliance that are irrelevant to the government's disbursement decisions") (citing *Mikes*, 274 F.3d at 697) (alterations, internal citations, and internal quotations omitted).

Based on the foregoing analysis, the Court finds that *Escobar's* materiality standard applies to all of Plaintiff's claims brought under § 3729(a)(1)(A) regardless of whether those claims were brought under a theory of implied false certification, express false certification, or fraudulent inducement. In this case, all of Defendants' alleged falsities were "misrepresentations about compliance with regulatory [and] statutory . . . requirements"—specifically Defendants falsely certified or verified that VECO complied with SDVOSB contracting requirements. Therefore, under *Bishop II*, the materiality standard must be applied. Additionally, because § 3729(a)(1)(B) also requires materiality, Plaintiff's claims under that subsection fail for the same lack of materiality as Plaintiff's claims under subsection (A). *See Coyne*, 17-1522-cv, 2017 WL 6459267, at *2 n. 2 (summary order)*; see also Hussain*, 14-CV-9107(JPO), 2017 WL 4326523, at *8 ("Courts generally treat these two provisions together"). Accordingly, Plaintiff's Count I and Count II FCA claims are dismissed as to all Defendants.

### D. Count III (§ 3729(a)(1)(C))

A defendant is liable under Section 3729(a)(1)(C) if he "conspires to commit a violation of subparagraph (A) [or] (B)." 31 U.S.C. § 3729(a)(1)(C). Defendants have argued for dismissal of

---

enforcement of the Act's materiality and scienter requirements" thus shifting the focus from whether alleged misrepresentations render a claim for payment *actually* false under circumscribed definitions of the various theories of liability to whether an alleged misrepresentation is *materially* false.

Count III on several grounds, including that Plaintiff has failed to allege an unlawful agreement among the Defendants.[6] ECF No. 13-2 at 20-21. The Court agrees.

Plaintiff's Complaint is entirely devoid of any allegations that Defendants entered into an unlawful agreement. This fails to satisfy Rule 9(b)'s particularity standard and is fatal to Plaintiff's FCA conspiracy claim. *See Ladas*, 824 F.3d at 27 (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government.") (citation omitted); *see also Scharff*, 13-cv-3791 (PKC) 2016 WL 5416494, at *9 (finding plaintiff's FCA conspiracy claim "[fell] far short of the pleading requirements of Rule 9(b)" where the "[c]omplaint [made] no allegations as to the existence of any agreement to violate the FCA."). Count III is hereby dismissed under Rule 9(b).[7]

Since Plaintiff's FCA claims under Counts I, II, and III are dismissed in their entirety for all the reasons stated above, the Court need not reach Defendants' other arguments with respect to Plaintiff's FCA claims.

### III.     Common Law Fraud and Unjust Enrichment Claims

Remaining after dismissal of Plaintiff's FCA claims are its claims for common law fraud and unjust enrichment. These claims fell within the court's supplemental jurisdiction under 28 U.S.C. § 1367(a), and "the decision whether to decline to exercise supplemental jurisdiction is purely discretionary" (*Oneida Indian Nation v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866 (2009)).

---

[6]     Plaintiff concedes that it has not adequately alleged an FCA conspiracy under Rule 9(b), but requests leave to amend its Complaint. ECF No. 23 at 25. Plaintiff's request for Leave to Amend is addressed below.

[7]     The Court notes that Plaintiff's FCA conspiracy claim fails for the separate reason that a plaintiff cannot allege a conspiracy to commit an FCA violation when it has failed to adequately allege an underlying violation of the statute. Thus, because Plaintiff's FCA causes of action under (a)(1)(A) and (a)(1)(B) are dismissed, dismissal of Plaintiff's conspiracy claim is warranted. *See Bishop I*, 823 F.3d at 50 ("[R]elators cannot show a conspiracy to commit fraud given that they have not sufficiently pleaded fraud under the FCA.").

Because the Court has dismissed the FCA claims over which it had original jurisdiction, the balance of several factors, including judicial economy, convenience, fairness, and comity weigh against this Court's continued exercise of jurisdiction over these claims. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343 (1988). Therefore, we decline to exercise jurisdiction over Plaintiff's state law claims and Plaintiff's common law fraud and unjust enrichment claims are hereby dismissed.

### IV.    Leave to Amend

Courts "should freely give leave to amend a complaint when justice so requires." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)) (internal quotation marks omitted). This is a "permissive standard" because of a "strong preference for resolving disputes on the merits." *Id*. at 212-13 (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

Plaintiff has requested leave to file an amended complaint in order "address . . . claims that the court deems warrant dismissal." ECF No. 23 at 25-26. Defendants Carter, SCI, and Strock move to preclude Plaintiff from filing an amended complaint, arguing that leave to amend should be denied because Plaintiff conducted a lengthy four-year investigation before filing its Complaint and any attempts at amendment would be futile. ECF Nos. 13-2 at 3; 18-1 at ¶ 2; 27 at 7.

In the time since Plaintiff filed its Complaint, *Escobar* has abrogated some of the requirements for adequately pleading an FCA cause of action under *Mikes* (which was previously the seminal FCA case in this Circuit) and its full ramifications are not yet known. *See Hussain*, 14-CV-9107(JPO), 2017 WL 4326523, at *3 n. 1 ("The FCA case law is a precedential minefield"). Due to the shifts in FCA case law since the Plaintiff filed its Complaint and the parties

filed their briefs, fairness militates granting Plaintiff a chance to amend its Complaint. Plaintiff's request for leave to amend is GRANTED.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Motion (ECF No. 35) is GRANTED and Defendants' Motions to Dismiss (ECF Nos. 13, 17, 18, 19) are GRANTED. Plaintiff has 30 days from the date of this Decision & Order to file an amended complaint. If Plaintiff does not file an amended complaint within 30 days, the Clerk of Court is directed to close this case without further Order.


IT IS SO ORDERED.

Dated: January 31, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court