UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -v- | : | 15-CV-887-G |
| | : | |
| LEE STROCK, KENNETH CARTER, | : | **AMENDED COMPLAINT AND** |
| CYNTHIA ANN GOLDE, and | : | **DEMAND FOR JURY TRIAL** |
| STROCK CONTRACTING, INC., | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

_____

        Plaintiff United States of America (the "United States" or the "Government"), by its

undersigned attorneys, alleges as follows:

## **INTRODUCTION**

        1.        This is an action for damages and civil penalties arising from false claims

presented or caused to be presented by defendants Lee Strock, Kenneth Carter, Cynthia Ann

Golde, and Strock Contracting, Inc. (Strock Contracting) to the United States in violation of the

federal False Claims Act (FCA), 31 U.S.C. §3729-33.

        2.        The claims in this case arise from the defendants' role in causing the Department

of the Air Force (Air Force), the Department of the Army (Army), and the Department of

Veterans' Affairs (VA) to award approximately $24 million in contracts that were set-aside for

performance by service-disabled, veteran-owned small businesses (SDVOSBs) to Veteran

Enterprises Company, Inc. (VECO).  Defendants Lee Strock and Ken Carter were partial owners

and officers of VECO, and defendant Golde was a former employee of VECO.  Defendant Lee

Strock is also an owner or officer of other companies that improperly profited by siphoning money from VECO that had been paid as a result of work it did on the contracts it obtained under false pretenses from the VA, the Army and the Air Force; these companies included defendant Strock Contracting, Strock Enterprises, Ltd. and LCM Development.  Defendant Strock Contracting was affiliated with VECO in that, among other things, both companies had common owners and officers, were, during all times relevant to allegations in this Complaint, co-located in the same building that was owned by Lee Strock or Strock Contracting, and were in the same line of business, namely construction related projects.

3.      As described more fully below, from 2008 to 2013 the defendants submitted, caused to be submitted, or conspired to submit or cause to be submitted, false claims or false statements material to claims in order to obtain or promote the award of federal SDVOSB set-aside contracts from the United States to VECO.  In connection with the award of these contracts, the defendants certified or caused certifications or statements to be made that VECO met all requirements to be an SDVOSB with actual knowledge or reckless disregard for the truth of the matter that VECO did not, in fact, meet such requirements and was not entitled to the award of such contracts.  By diverting contracts and benefits therefrom intended for service-disabled veterans towards an ineligible company, defendants undercut the express congressional purpose in enacting laws intended to encourage the awards of federal contracts to SDVOSBs. The United States did not receive the intended benefits of a SDVOSB receiving and performing federal contracts.  These wrongful actions further induced or resulted in the Government's inappropriate award of these contracts and payments of millions of dollars on these federal contracts.  Defendants, therefore, are liable to the United States under the FCA for treble damages and civil penalties as permitted by law.

4.     Additionally, through these actions, the defendant intended to defraud the Government through the submission of these material misrepresentations, the Government reasonably relied upon these representations, and the Government suffered damage as a result of such reliance in making payments to ineligible contractors and through the diversion of contractual opportunities and the acquisition of profits that were intended for legitimate SDVOSBs.  As a result, defendants are responsible for common law fraud and are liable to the Government for damages.

5.     Further, as a result of defendants' misrepresentations and fraudulent conduct, defendants were unjustly enriched at the Government's expense, and equity and good conscience militate against permitting defendants to retain this enrichment, and the United States made payments on the contracts by mistake.  Defendants, therefore, are liable to the Government for all moneys unjustly earned and money wrongfully paid.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims brought under the False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345, over the remaining claims pursuant to 28 U.S.C. § 1345, and over all claims pursuant to the Court's general equitable jurisdiction.

7.     This Court has personal jurisdiction over all defendants pursuant to 31 U.S.C. Section 3732(a) because at least one of the defendants can be found in, resides in, or transacts business in this District or because the acts proscribed by 31 U.S.C. § 3729 occurred in part in this District.

8.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c) because one or more defendants reside in or have transacted business this District or because a substantial part of the events or omissions giving rise to the claims occurred

in this District.

**PARTIES**

9.     Plaintiff is the United States, acting on behalf of the Department of Defense, Department of the Air Force, Department of the Army, the VA, and the Small Business Administration (SBA).

10.     Defendant Strock Contracting, Inc. is a New York State corporation with its principal place of business in Erie County, NY.

11.     Defendant Lee Strock is a resident of Erie County, New York and is the Vice President and 30 percent owner of VECO.  Lee Strock controlled the daily operations and management of VECO, and is the 90 percent owner, Chief Executive Officer and President of Strock Contracting.  Lee Strock is not a veteran with a service-connected disability.

12.     Defendant Ken Carter is a resident of Erie County, New York, and is the 19 percent owner of VECO.  Ken Carter assisted Lee Strock in the control of the daily operations and management of VECO, and is the 10 percent owner and Vice President of Strock Contracting.  Ken Carter is not a veteran with a service-connected disability.

13.     Defendant Cynthia Ann Golde is a resident of Erie County, New York.  During the relevant times, Cynthia Golde was an employee of VECO, Strock Enterprises, and Strock Contracting, and assisted Lee Strock and Ken Carter with the operations of VECO and Strock Contracting.  Cynthia Golde is not a veteran with a service-connected disability.

14.     In doing the acts described in the paragraphs below, defendants Lee Strock, Ken Carter, and Cynthia Golde, at all relevant times, acted as agents of Strock Contracting and VECO.

15.     Prior to the filing of the Government's original complaint, the United States

notified Lee Strock, Ken Carter, and Strock Contracting of potential civil claims under the FCA

and other federal statutes and regulations, equity or the common law relating to alleged false

statements made regarding federal contracts awarded to VECO from 2006 to the present.

Defendants Lee Strock, Ken Carter, and Strock Contracting entered several tolling agreements,

agreeing that the period between and including February 7, 2014 and October 7, 2015 shall be

excluded when determining whether any civil or administrative claims are time-barred by statute

of limitations, laches or any other time-barred defenses.

## **FACTUAL BACKGROUND**

A. <u>Statutory and Regulatory Requirements for SDVO Contracting</u>

16.    The federal contacts that were obtained based on false certifications as to VECO's

SDVOSB contracting eligibility at issue in this lawsuit arose under two statutes that apply

respectively to contracts awarded by the VA and contracts awarded by other executive agencies.

In 2003, Congress passed the Veterans Benefit Act, P.L. 108–183, 117 STAT. 2651 (2003

Veterans Act).  Section 308 of the 2003 Veterans Act added a new section 36 to the Small

Business Act, 15 U.S.C. § 657f, which allowed agencies to set aside the awards of certain federal

contracts to eligible service-disabled, veteran-owned small businesses (SDVOSBs) either:  (1) on

a sole-source basis for contracts of $5 million or less for manufacturing contracts, and $3 million

or less for other contracts, and (2) through competitions limited to SDVOSBs.  Pub. L. 108-183,

Title III, § 308, codified at 15 U.S.C. § 657f.  The Small Business Act also provides that not less

than three percent of all prime and subcontracts awarded by all federal agencies and departments

should be awarded to SDVOSBs.  15 U.S.C. § 644(g)(2).

17.    In 2006, Congress enacted the Veterans Benefits, Health Care, and Information

Technology Act of 2006, (2006 Veterans Act), Pub. L. 109-461, 120 Stat. 3431; establishing

(through section 502 of that Act) separate, though comparable, SDVOSB contracting authority for contracts issued by the VA.  38 U.S.C. § 8127.  Section 502 of the 2006 Veterans Act authorizes the VA Secretary to establish a goal that not less than three percent of VA contracts and subcontracts be awarded to SDVOSBs.  The purpose of this goal is to "increase contracting opportunities for small business concerns owned and controlled by … veterans with service connected disabilities."  *Id.* § 8127(a)(1).  The 2006 Veterans Act permits contracts to be set aside for SDVOSBs either on a sole-source basis (which are not awarded through a competition), if certain conditions are met, or through limited competitions in which only veteran-owned firms can submit bids.  *See* 38 U.S.C. §§ 8127(c) and (d).

18.     To implement the provisions of the 2003 Veterans Act, the SBA and the Federal Acquisition Regulations ("FAR") Council have established regulatory criteria that companies need to meet in order to obtain contracts that are awarded by federal agencies – other than the VA – on a sole-source basis or through competitions that are limited to SDVOSBs.[1]  The VA has also implemented regulations to implement the 2006 Veterans Act.  Under both statutes, the FAR and the VA and SBA regulations, to be eligible to obtain a federal contract that is set aside for a SDVOSB, either on a sole-source award process or through limited competitions open only to SDVOSBs, a company must be majority-owned (at least 51% ownership) and controlled on a long-term and day-to-day basis by a service-disabled veteran.  38 U.S.C. § 8127(f); 15 U.S.C. § 632(q)(1); 48 C.F.R. §§ 2.101, 52.212-3; 38 C.F.R. § 74; 13 C.F.R. § 125.10.

19.     The Small Business Act establishes that firms which misrepresent their status as

---

[1]  The FAR is a regulation, codified in Parts 1 through 53 of Title 48 of the Code of Federal Regulations, which generally governs acquisitions of goods and services by executive branch agencies.  Pursuant to 41 U.S.C. §§ 1211, 1303, the FAR are issued by the FAR council, which is made up of: the Administrator for Federal Procurement Policy, the Secretary of Defense, the Administrator of National Aeronautics and Space; and the Administrator of General Services (https://www.acquisition.gov/far-council-members).

an SDVOSB "shall be subject to" civil prosecution under the FCA.  15 U.S.C. §§ 637(m)(5) and

(6); 657f(d).

*Contract Eligibility Certification Requirements*

20.     There are different procedures for firms to certify that they are eligible to obtain

SDVOSB set-aside contracts under the two statutes.  Firms that bid on SDVOSB set-aside

contracts – issued by agencies <u>other</u> than the VA – must "self-certify" that they meet the criteria

as an SDVOSB to be eligible for contract award.  *See* 13 C.F.R. § 125.18 (An SDVO [Small

Business Concern (SBC)] must submit the following representations with its initial offer (which

includes price) on a specific contract:  (1) It is an SDVO SBC; 48 C.F.R. § 19.1403(b) ("[a]t the

time that a[n] [SDVOSB] submits its offer" to bid on a contract "it must represent to the

contracting officer that it is a[n] … [SDVOSB]"); § 52.219-1(c)(7) ("The offeror represents as

part of its offer that it □ is, □ is not a service-disabled veteran-owned small business concern.").

21.     Contractors must complete – and update on an annual basis – a representation as

to their eligibility for SDVOSB contracts (as well as other representations and certifications) in

the System for Award Management ("SAM") (formerly the Online Representation and

Certification Application).  13 C.F.R. § 125.33(a); FAR §§ 4.1201, 4.1202.  These

"representations and certifications … are incorporated by reference into the contract," 48 C.F.R.

§ 52.204-19; *see also id.* at §§ 4.1201(d), 4.1202(b), and contracting officers must verify an

offeror's representations and certifications at the time of contract award.  48 C.F.R.

§ 4.1201(b)(2).

22.     In the case of SDVOSB set-aside contracts awarded by the VA, the 2006 Veterans

Act provides (1) that firms seeking to obtain SDVOSB set-aside contracts must demonstrate to

the VA that they are "owned and controlled by … a veteran with a service-connected disability."

*id.* §§ 8127(f)(4) (*accord* 38 C.F.R. § 74.2) and (2) that the VA must establish a database of

eligible SDVOSBs for VA contracts.  38 U.S.C. § 8127(f).  Companies seeking to obtain

SDVOSB set-aside contracts must apply to the VA Center for Verification and Evaluation

(CVE) by providing information to demonstrate that THEY are owned and controlled by service-

disabled veterans.  If CVE determines that a contractor meets the contract eligibility

requirements to be an SDVOSB, CVE will add the contractor to the Vendor Information Pages

(VIP) database.  Additionally, under the VA Acquisition Regulations, "[a]t the time of

submission of offer, the offeror must represent to the contracting officer that it is a (1) SDVOSB

concern or VOSB concern; (2) Small business concern under the North American Industry

Classification System (NAICS) code assigned to the acquisition; and (3) Verified for eligibility

in the VIP database. 48 C.F.R. § 819.7003(b).

23.     Regardless of whether an SDVOSB set-aside contract is awarded by the VA or by

another executive agency, if a contract is set aside for an SDVOSB, provisions must be included

in the solicitation and the contract stating that "[o]ffers received from concerns that are not

[SDVOSBs] shall not be considered," and that "[a]ny award resulting from this solicitation shall

be made to [an SDVOSB]."  48 C.F.R. §§ 19.1407, 52.219-27(b), 819.7009, 852.219–10)(b).

*Contract Eligibility Requirements As to Control by a Service-Disabled Veteran Control*

24.     Regulations the VA promulgated to implement the provisions of the 2006

Veterans Act state that to qualify for an SDVOSB set-aside contract, a firm must be at least 51

percent unconditionally and directly owned by one or more service disabled veterans.  38 C.F.R.

§ 74.3.  Additionally, VA regulations provide that the service disabled veteran must control

"both the strategic policy setting exercised by boards of directors and the day-to-day

management and administration of business operations." *Id.* § 74.4(b).

25.     Under the VA regulations, although non-veterans may be involved in the management of a firm, the non-veteran may not:  (1) exercise actual control or have the power to control the applicant or participant; or (2) receive compensation from the applicant or participant in any form as directors, officers or employees, including dividends, that exceeds the compensation to be received by the highest officer who must be a service-disabled veteran.  *Id.* § 74.4(g).

26.     The relevant FAR and SBA regulations implementing the 2003 Veterans Act are similar.  SBA regulations provide that "[c]ontrol by one or more service-disabled veterans means that both the long-term decision making and the day-to-day management and administration of the business operations must be conducted by one or more service-disabled veterans."  13 C.F.R. § 125.10.  Section 52.212-3 of the FAR, Offeror Representations and Certifications, defines a "Service-disabled veteran-owned small business concern" as a small business concern that is 51 percent owned by one or more service-disabled veterans, "[t]he management and daily business operations of which are controlled by one or more service-disabled veterans."  48 C.F.R. § 52.212-3.

B.  The Fraudulent Scheme

27.     The defendants violated the FCA by fraudulently submitting, causing to be submitted, or conspiring to submit or cause to be submitted, false claims and false statements material to false claims in connection with the award of SDVOSB contracts to VECO by the VA, the Department of the Army or the Department of the Air Force either as a sole-source award intended for eligible SDVOSBs or through competitions that were intended to be limited to eligible SDVOSBs.  Defendants did so with actual knowledge or reckless disregard of the fact that VECO did not meet all of the requirements to be an SDVOSB.  These actions also

constituted common law fraud and resulted in defendants' unjust enrichment and wrongful payments by the Government.

*Establishment of VECO*

28.     Prior to the establishment of VECO, Lee Strock headed and owned a company named Strock Paving and Construction, Inc. (Strock Paving).  Strock Paving was admitted into the SBA 8(a) contracting program for companies owned by economically and socially disadvantaged individuals, and was able to obtain numerous contracts between 2001 and 2005 worth approximately $5.5 million.  However, upon the mandatory expiration of Strock Paving's nine-year term in the 8(a) program, *see* 13 C.F.R. § 124.2, Strock Paving was graduated out of the program.  On March 22, 2002, Strock Paving changed its name to Strock Contracting.

29.     Under SBA regulations, an economically and socially disadvantaged person can only use his or her disadvantaged status to gain admission to the 8(a) Program one time.  13 C.F.R. § 124.108(b).  As Lee Strock could no longer rely on the 8(a) Program to obtain federal contracts, he looked for other contracting opportunities.

30.     In or around 2006, Lee Strock decided to recruit a service-disabled veteran to head a company in order that Lee Strock and Strock Contracting could earn profits on federal contracts from the VA and other federal agencies that were set aside for SDVOSBs.  Strock Contracting would not otherwise be eligible to obtain SDVOSB set-aside contracts because Lee Strock is not a veteran with a service connected disability.

31.     Around that time, Lee Strock met with Terry Anderson, who was a veteran with a service-connected disability on one or more occasions to discuss the formation of an SDVOSB. At the time of these discussions, Lee Strock knew that Terry Anderson was a veteran with a disability connected to his military service.

32.     As a result of the discussions between Lee Strock and Terry Anderson, VECO was formed with Terry Anderson nominally appointed as President and 51 percent owner, Lee Strock as Vice President and 30 percent owner, and Ken Carter as Secretary or another officer and 19 percent owner.  In fact, Terry Anderson was little more than a figurehead so that VECO could obtain SDVOSB set-aside contracts.

33.     Lee Strock or Strock Contracting provided financial support that helped VECO become established as a company.

34.     Ken Carter also provided financial support that helped VECO become established as a company.

35.     Prior to 2008, VECO submitted an application to the VA to have VECO recognized as an SDVOSB.

36.     Under Lee Strock's general direction, Cynthia Golde or other employees of Strock Contracting or VECO were personally and directly involved in the submission of this application to the VA to have VECO recognized as an SDVOSB.

37.     Prior to 2008, information was entered in various online databases, including the Central Contractor Registration system (CCR) and the Online Certifications and Representations Application (ORCA), representing that VECO was an SDVOSB.

38.     The information in the CCR and the ORCA was periodically updated to state that VECO was an SDVOSB.

39.     Under Lee Strock's general direction, Cynthia Golde or other employees of Strock Contracting or VECO were personally and directly involved in the process by entering information in the ORCA and CCR certifying that VECO was an SDVOSB.

40.     In order for VECO to be eligible to obtain SDVOSB set-aside contracts, VECO

had to be 51 percent owned by a veteran with a service-connected disability, and had to be under the day-to-day and long-term control of a veteran with a service-connected disability.

41.     Although defendants possessed actual knowledge or acted in reckless disregard of the fact that VECO did not meet the criteria to be eligible for SDVOSB set-aside contracts because VECO was under the control of Lee Strock, they knowingly submitted or caused to be submitted VECO's application to the VA, and submission of certifications in the CCR and ORCA, representing that VECO met these criteria.

42.     Subsequent to this application, the VA notified VECO that it had been recognized as an SDVOSB.

43.     In holding these discussions with Terry Anderson, setting up VECO, and in generally directing Cynthia Golde or other employees of Strock Contracting or VECO to submit an application to the VA to have VECO recognized as eligible for SDVOSB set-aside contracts awarded by the VA, and to post certifications on the ORCA and CCR that VECO was eligible for SDVOSB set-aside contracts awarded by other executive agencies, Lee Strock intended that he, personally, Strock Contracting and other companies that Strock owned or controlled would earn profits on federal SDVOSB set-aside contracts.

*Terry Anderson Had a Limited Role in Running VECO*

44.     All of the following allegations relate to the time period from 2008 through 2013.

45.     Between 2008 and 2013, VECO bid on, and successfully obtained the award of, contracts from the VA, the Department of the Army (Army) and the Department of the Air Force (Air Force) that were set aside on a sole source basis for an SDVOSB or through competitions limited to SDVOSBs.  These contracts are identified below.

46.     Although Terry Anderson was the 51 percent owner and President of VECO,

- 12 -

defendants permitted him to have only a limited role in managing the operations of VECO or supervising the submission of bids on these contracts or supervising the work done under these contracts.

47.     In fact, between 2008 and 2013, Terry Anderson worked full-time as a New York State Parole Officer, and therefore had little time to devote towards managing the day-to-day operations of VECO.

48.     During this time, VECO listed its address as 2095 Old Union Road, Cheektowaga, NY.

49.     The building located at 2095 Old Union Road, Cheektowaga, NY is owned by Lee Strock.

50.     Cynthia Golde worked out of the building at 2095 Old Union Road as the office manager for VECO.

51.     Between 2008 and 2013, Terry Anderson signed paperwork related to these contracts which included payroll documents, tax returns, subcontractor agreements, blank checks, and insurance renewals.  In order for Terry Anderson to sign this paperwork, he would go to the building located at 2095 Old Union Road, and Cynthia Golde would make the paperwork available to him to sign.

52.     Terry Anderson was never given a key to access the building at 2095 Old Union Road where VECO's office was allegedly located.

53.     In order for Terry Anderson to gain access to the building at 2095 Old Union Road, Cynthia Golde or other employees of Strock Contracting or other businesses owned or partially owned by Lee Strock would have to admit him into the building. Cynthia Golde handled all of the VECO financial paperwork, including salary and payroll paperwork.

54.     VECO's payroll and other business records were maintained at 2095 Old Union Road, Cheektowaga, NY.

55.     Terry Anderson was not given access to payroll records for other VECO employees.

56.     Terry Anderson was not given statements from VECO bank accounts.

57.     Terry Anderson was not involved in the selection of which contracts VECO submitted bids on.

58.     Generally, Lee Strock would decide which SDVOSB contracts VECO would submit bids on.  Sometimes this was based on recommendations from Strock Contracting or VECO employees other than Terry Anderson or subcontractors.

59.     Other than signing bid proposals and other contract documents Cynthia Golde presented to him, Terry Anderson was not involved in VECO's submission of bids on, or responding to, any Government Request for Proposals.

60.     Cynthia Golde knowingly presented or caused to be presented bids on behalf of VECO to the VA, the Department of the Army and the Department of the Air Force on contracts set aside for SDVOSBs.  These contracts are identified below.

61.     Cynthia Golde knowingly presented or caused to be presented invoices or request for payment under behalf of VECO to the VA, the Department of the Army and the Department of the Air Force on contracts set aside for SDVOSBs.

62.     Cynthia Golde's actions in knowingly presenting or causing to be presented invoices, requests for payment, and bids on behalf of VECO to the VA, the Army and the Air Force on contracts set aside for SDVOSBs were performed at Lee Strock's general direction.

63.     Terry Anderson occasionally attended pre-award and post-award meetings held

- 14 -

by VECO's various Government customers, which included the VA, the U.S. Army Corps of Engineers in Buffalo and the U.S. Army Arsenal in Watervliet, New York.

64.     Occasionally, Terry Anderson would travel to VECO's work sites to perform inspections.

65.     Other than signing paperwork, occasionally attending pre-award and post-award meetings held by VECO's various Government customers, and occasionally performing inspections of VECO work sites, Terry Anderson performed little or no supervision of, or work on, Government contracts that VECO performed.

66.     Other than signing paperwork, attending pre-award and post-award meetings held by VECO's various Government customers, and occasionally performing inspections of VECO work sites, Terry Anderson performed little or no management of VECO's day-to-day operations.

67.     Terry Anderson did not act as project manager for any of the contracts that VECO performed.

68.     Terry Anderson did not prepare labor and material cost estimates for contracts that VECO submitted bids on to the Government.

69.     Ken Carter prepared labor and material cost estimates for some contracts that VECO submitted bids on to the Government.

70.     Terry Anderson did not supervise the contract work that VECO performed.

71.     Project managers reported directly to Lee Strock, not Terry Anderson, on issues such as status of contracting jobs and problems that arose during the performance of those jobs. Lee Strock and Ken Carter also supervised the contract work that VECO performed.

72.     Terry Anderson did not regularly conduct interviews regarding individuals that

were hired to work for VECO.

73.     Other than hiring performed by VECO project managers, Lee Strock or Ken Carter regularly interviewed individuals that were hired to work for VECO.

74.     Terry Anderson did not make the decisions on whether to hire or terminate VECO employees.

75.     Lee Strock made the decisions to hire or terminate most VECO employees.

76.     To the extent that work on contracts awarded to VECO was done by sub-contractors, Terry Anderson had no role in identifying or approving sub-contractors or seeking bids to obtain subcontractors.

77.     Lee Strock handled all of the pricing of subcontracts for VECO and approved the payments to VECO subcontractors.

78.     Under Lee Strock's general direction, email accounts were established and emails were sent regarding VECO contracts using Terry Anderson's name as the sender.  This included vecoinc@hotmail.com.  Terry Anderson did not have the ability to access this email account and was not aware of these emails until shown a copy by a federal investigator.  Cynthia Golde controlled the vecoinc@hotmail.com which was a master account used for VECO contracts.

79.     Although Terry Anderson was aware of another email account, Terry.Anderson@vet-eci.com, Terry Anderson never used this email account to send emails for VECO work.  Under Lee Strock's general direction, other personnel used this email account to make it appear as if Terry Anderson was sending emails regarding VECO contracts.

80.     Lee Strock controlled the day-to-day and long-term business operations of VECO.

81.     Ken Carter knew that Lee Strock controlled the day-to-day and long-term business operations business operations of VECO.

- 16 -

82.     Cynthia Golde knew that Lee Strock controlled the day-to-day and long-term business operations business operations of VECO.

*Lee Strock Controlled VECO in Common Enterprise With Other Companies*

83.     According to Erie County property records, defendant Lee Strock owns the building at 2095 Old Union Road, Cheektowaga, NY, and operates the building through a company named LCM Development, LLC. (LCM).

84.     Information from the New York Department of State Division of Corporations (NY DOS DOC) shows the following:  Lee Strock is the Chief Executive Officer of LCM and LCM's address is 2095 Old Union Road in Cheekatowaga, NY.  Another company, Strock Enterprises, Ltd. (Strock Enterprises), also shows its address as 2095 Old Union Road in Cheekatowaga, NY.  Lee Strock's son, David Strock, is identified as the Chief Executive Officer of Strock Enterprises.

85.     Although NY DOS DOC records show Strock Contracting's address as 581 N. Blossom Road, in Elma, New York, this location is actually a personal residence.  In fact, Strock Contracting used the address of 2095 Old Union Road in Cheekatowaga, NY in conducting business transactions.

86.     Although Strock Contracting, LCM, Strock Enterprises and VECO are established as separate corporate entities, in fact, Lee Strock ultimately controlled all of these companies on a day-to-day and long-term basis, and these businesses essentially operated between 2008 and 2013 as one common enterprise.

87.     All of these companies have shared officers and employees.  Lee Strock was an officer and part owner of Strock Contracting, VECO and LCM.  Ken Carter was a part owner and officer of both Strock Contracting and VECO.  He also worked for Strock Enterprises.

Various construction projects that were performed by Strock Enterprises were managed by Lee Strock.  Cynthia Golde acted as the controller for VECO, Strock Contracting and Strock Enterprises.  Cynthia Golde was listed as the one of the primary points of contact for Strock Enterprises in its registration in the CCR database.

88.     In performing federal contracts that they obtained as prime contractors, VECO Strock Contracting, and Strock Enterprises often subcontracted work to each other, and shared equipment in order to perform the contracts.

89.     On other occasions employees of these companies were moved from company to company as needed to be able to perform the work, and would fill out time cards depending on the particular project.  For example, in one email sent on December 9, 2009, Cynthia Golde asked Lee Strock whether an employee should be moved from VECO to Strock Enterprises in order to pay him overtime.  After Cynthia Golde said she would rather leave him on VECO's payroll, Lee Strock replied "ok."

90.     All of these companies used one contract to pay for cell phones and other devices such as network based tablets for a number of years.

91.     Lee Strock signed tax returns and orders for VECO using his Strock Contracting email address, lee@strockcontracting.com.

92.     Lee Strock paid bills that were submitted to Strock Contracting, such as supplier invoices, by signing checks on VECO's bank account.

93.     Lee Strock directed that VECO money be used to pay for Strock Enterprises bills, including payment for business cards of a Strock Enterprises employee and payment of health insurance costs of Strock Enterprises employees over many months.

*Although Terry Anderson Received Limited Financial Benefits from VECO, Lee Strock*
*and the Companies He Controlled Earned Substantial Financial Benefits*

94.     Terry Anderson received very little of the profits earned on the SDVOSB

contracts that VECO performed from 2008 through 2013, whereas, Lee Strock and companies he

owned such as Strock Construction earned significant benefits from the VECO contracts.

95.     In exchange for the financial support from Lee Strock or Strock Contracting,

Strock and Terry Anderson agreed that Terry Anderson would be paid 5 percent of the net profits

generated by VECO.

96.     In fact, Terry Anderson was actually paid less than 5 percent of the profits that

VECO earned.

97.     From 2008 through 2013, Terry Anderson was not the highest paid VECO

employee.

98.     In or around 2009, Terry Anderson told Lee Strock that he should be earning

more money for his role at VECO.  Upon information and belief, Lee Strock refused to pay

provide more money.

99.     VECO obtained a business credit card from Capital One in the name of Lee A.

Strock, Veteran Enterprises Co. Inc.  The credit card account was opened in March 2008.

100.    Lee Strock was the applicant for this credit card from Capital One.  Lee Strock

was considered the primary user who controlled the account limitations and was the only

individual who could add authorized users to the credit card.  Furthermore, Lee Strock

determined the spending limits and cash advances allowed for each authorized user.

101.    Under this credit card, Lee Strock and Ken Carter each had such authority to use

the card and could spend up to $20,000 on the card. Furthermore, Lee Strock could withdraw up

to $10,000 cash on the card.  The remaining five individuals who had authority to use the card

had spending limits ranging from $500 to $2,000.  Terry Anderson had the lowest spending limit

at $500 and had no authority to withdraw cash on the card.

       102.    VECO's financial records reflect a large number of questionable payments from

VECO to Lee Strock and companies he owned and/or controlled.

       103.    VECO paid $4000 a month in 2011 and 2012 to Lee Strock as rent on the

property at 2095 Old Union Road, Cheektowaga, NY.  However, as discussed above, Terry

Anderson did not even have a key to this building.  Other than Cynthia Golde, who worked for

VECO, Strock Contracting and Strock Enterprises, and other employees who also worked for

these three companies, it is unclear that VECO was actually obtaining a separate benefit from

these "leased" premises.

       104.    VECO also made a series of questionable payments to Strock Contracting

including:

- a payment of $335,000 to Strock Contracting on January 25, 2008 by check #12170 with no explanation of what the payment was for;

- a payment of $54,000 to Strock Contracting in or around September 22, 2008 for "professional services"

- a payment of $65,000 to Strock Contracting on April 23, 2009

- non-check bank transfers to Strock Contracting totaling $40,000 in June 2009 with no explanation for the transfers;

- a payment of $250,000 to Strock Contracting on December 28, 2009 by check #13315, which was annotated to reflect VECO's repayment of a loan;

- a payment of $101,148.37 to Strock Contracting by check #14027 on December 30, 2011 for equipment rental in 2010 and 2011, and multiple other payments around this time for equipment rental;

- a payment of $106,260 to Strock Contracting by check #14059 on February 29, 2012 for "consulting services" provided by Ken Carter during 2011 even though Ken Carter was an officer of VECO; and

- a payment of $20,100 to Strock Contracting by check #14129 on March 31, 2012 for "management" provided by Ken Carter during the first quarter of 2012 even though Ken Carter was an officer of VECO.

105.    On June 11, 2009, VECO check #13052 was made out in the amount of

$154,500.00 to LCM Development but there was no information describing the purpose of this

payment.  On June 30, 2009, VECO check #13074 was made out in the amount of $300,000.00

to LCM Development but there was also no information describing the purpose of this payment

either.  During this same month (June 2009), VECO received payments from the United States

Treasury, which appear to be payments on federal contracts, totaling more than $700,350.

106.    VECO made a series of questionable payments to Strock Enterprises that were

annotated as loans or loan repayments.  However, there was no evidence of any loan agreements

between the companies.  For example, these included

- a payment of $90,000 to Strock Enterprises on November 2, 2007 by check #12094, which was annotated to reflect VECO's repayment of a loan;

- a payment of $24,500 to Strock Enterprises on January 25, 2008 annotated "VECO Loan;"

- a payment of $55,000 to Strock Enterprises on September 5, 2008, which was annotated to reflect VECO's repayment of a loan

- a payment of $30,000 to Strock Enterprises on May 29,2009, which was annotated to reflect VECO's repayment of a loan;

- a payment of $80,000 to Strock Enterprises on July 15, 2011, which was annotated to reflect VECO's repayment of a loan; and

- regular payments over many months for the costs of health and dental insurance of Strock Enterprises employees.

*SDVO Contracts Obtained by VECO*

107.    From 2008 through 2013, VECO obtained more than $21,496,019 million in

contracts from the VA, Army and Air Force that were expressly reserved for performance by

SDVOSBs.  The discussion of certain of these contracts below is representative of the SDVO set-aside contracts that VECO obtained during this period.

108.    All of the contracts identified below were set aside for SDVOSBs either on a sole-source basis or through limited competitions in which only SDVOSBs could submit bids.  Only companies that met all of the VA or SBA requirements to be an SDVOSB were eligible to obtain these contracts.

109.    Upon information and belief, defendants Lee Strock and Ken Carter caused defendant Cynthia Golde to submit bids for these contracts, and to submit claims, invoices or requests for payment under those contracts.

110.    As reflected below, had the Government known that VECO did not, in fact, meet all of the applicable requirements to obtain SDVOSB set-aside contracts, it would not have awarded these SDVOSB contracts to VECO, and had the Government learned – after contract performance had begun – that VECO was not eligible when it bid on the contracts because it was not controlled by a service-disabled veteran it would have terminated the contracts.

*Army Contract W911-PT-08-C-0014*

111.    In the Spring of 2008, the Army Watervliet Arsenal Contracting Office in Watervliet, NY issued solicitation number W911PT08B0001 for replacement of light fixtures at the Arsenal.  The solicitation specifically advised that the contract "is set aside for service-disabled veteran owned firms," which meant that the successful bidder needed to meet the criteria in SBA regulations and the FAR to be an SDVOSB to obtain the contract.  VECO submitted a bid in response to the solicitation.

112.    The Arsenal contracting office selected VECO to perform the work after, among other things, determining that VECO had self-certified in a federal database that it met all of the

criteria set forth in the SBA regulations and the FAR to be an SDVOSB.  The contracting officer

confirmed this by entering data in the Federal Procurement Data System that VECO was owned

by a Service Disabled Veteran, and recorded that the contract was awarded as an SDVOSB set-

aside.  On April 18, 2008, the Arsenal awarded contract W911-PT-08-C-0014 to VECO through

an SDVOSB limited competition.  The contract incorporated section 52.219-27 of the FAR,

Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside, as a term of the

contract.

113.     VECO submitted three invoices to the Army for payment on contract W911-PT-

08-C-0014 between April 18, 2008 and February 4, 2009 and was paid a total of $390,084.00 on

this contract.  These applications for payment included a certification by the contractor that the

contract was performed in accordance with the specifications, terms and conditions of the

contract, which included the requirement that the contract be performed by an SDVOSB.

Cynthia Golde submitted one such certification in an invoice seeking payment of $180,684.90 on

January 12, 2009.

114.     The contracting officer for contract W911-PT-08-C-0014, Melanie Keith, did not

know that VECO was not controlled by a service-disabled veteran.  Had she known that VECO

was not controlled by a service-disabled veteran she would not have awarded contract to VECO.

Further, had she learned that VECO was not controlled by a service-disabled veteran after she

had awarded the contract, she would have directed the Defense Financial and Accounting

Service to stop payments on the contract and could have terminated the contract for case in

consultation with her legal office.

115.     In submitting a bid to obtain this contract, executing the contract, and by

submitting three invoices to obtain payment on the contract, defendants knowingly submitted or

caused to be submitted false representations that VECO met all of the SBA and FAR requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false representations as to VECO's eligibility for SDVOSB awards, defendants induced the Government to award the contract.

*Army Contract W911PT-09-C-003*

116.  In October 2005, the Army Watervliet Arsenal Contracting Office issued a solicitation, seeking bids from SDVOSBs on a contract to install sprinklers, a suspended ceiling, heating, and air conditioning in building 35 at the Watervliet Arsenal.  The solicitation specifically advised that the contract was set aside for SDVOSBs, which meant that the successful bidder needed to meet the criteria in SBA regulations and the FAR to be an SDVOSB to obtain the contract.  VECO submitted a bid in response to the solicitation.

117.  The Arsenal contracting office selected VECO to perform the work after, among other things, determining that VECO had self-certified in a federal database that it met all of the criteria set forth in the SBA regulations and the FAR to be an SDVOSB.  The contracting office confirmed this by entering data in the Federal Procurement Data System that VECO was owned by a Service Disabled Veteran, and recorded that the contract was awarded as an SDVOSB set-aside.

118.  On November 5, 2008, the Watervliet Office awarded a contract to VECO to perform this work through an SDVOSB limited competition.  Initially, the contract number was W911PT-08-P-0442, but this contract was cancelled and renumbered at W911-PT-09-C-003 when a modification was done that increased the contract value to over $100,000. The contract award form that VECO signed expressly stated that it was reserved for SDVOSBs.  The contract also incorporated section 52.219-27 of the FAR, Notice of Total Service-Disabled Veteran-

Owned Small Business Set-Aside, as a term of the contract.

119.    VECO submitted two invoices for payment on contract W911-PT-08-C-0014 between November 5, 2008 and February 13, 2009 and was paid a total of $136,672.18 on this contract.  These applications for payment included a certification by the contractor that the contract was performed in accordance with the specifications, terms and conditions of the contract, which included the requirement that the contract be performed by an SDVOSB.

120.    The contracting officer for contract W911-PT-08-C-0014, Charles Farny, would not have been authorized to award the contract to VECO if it had not certified itself as an SDVOSB.  Mr. Farny did not know that VECO was not controlled by a service-disabled veteran. If he had reason to believe that VECO was not an eligible SDVOSB before the contract was awarded, he would have notified the SBA and would not have awarded the contract to VECO if SBA had determined that the firm was not eligible.  If he had reason to believe VECO was not an SDVOSB after the contracts were awarded he would have suspended the contract, notified the SBA, and requested their assistance, and he would have also sought guidance from WVA Contracting's Legal Office, regarding things such as stopping payment and/or terminating the contracts.  Mr. Farny did not think there was any reason why VECO would be allowed to keep performing the contract if it was determined that it was not an SDVOSB.  Finally, Mr. Farny advised that all of the foregoing information would have also applied to the four other SDVOSB set-aside contracts that he had awarded to VECO, W911PT-08-P-0415; W911PT-08-P-0442; W911PT-09-P-0276; and W911PT-09-P-0311.

121.    In submitting a bid to obtain this contract, executing the contract, and by submitting two invoices to obtain payment on the contract, defendants knowingly submitted or caused to be submitted false representations that VECO met all of the SBA and FAR

requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false

representations as to VECO's eligibility for SDVOSB awards, defendants induced the

Government to award the contract.

*Air Force Contract FA6670-08-C-0004*

122.    In or about September 2008, the contracting office at the Niagara Falls Air

Reserve Station, Niagara Falls, NY issued solicitation FA667008R0004 for the repair of roads at

the Station.  The solicitation specifically advised that the contract was set aside for SDVOSBs,

which meant that the successful bidder needed to meet the criteria in SBA regulations and the

FAR to be an SDVOSB to obtain the contract.  VECO submitted a bid in response to the

solicitation.

123.    The Station contracting office selected VECO to perform the work after, among

other things, determining that VECO had certified in a federal database that it met all of the

criteria set forth in the SBA regulations and the FAR to be an SDVOSB.  The contracting office

confirmed this by entering data in the Federal Procurement Data System that VECO was owned

by a Service Disabled Veteran, and recorded that the contract was awarded as an SDVOSB sole

source award.  On September 30, 2008, the Air Force award contract FA6670-08-C-0004 to

VECO.

124.    VECO submitted three invoices for payment on contract FA6670-08-C-0004

between September 30, 2008 and December 18, 2009 and was paid a total of $741,406.78 on this

contract.  In the applications for payment, the contractor certified that "the Work covered by this

Application for Payment has been completed in accordance with the Contract Documents,"

which included the requirement that the work be performed by an SDVOSB.

125.    The contracting specialist for contract FA6670-08-C-0004, Andrew Church,

advised that before any SDVOSB set-aside contract can be awarded the contractor would first have to be determined to be an SDVOSB.  Mr. Church was not aware that VECO was not controlled by a service-disabled veteran.  If he had found out the company was not controlled by a service-disabled veteran, the Air Force would not have awarded the contract to VECO.  If he had reason to believe VECO was not an SDVOSB after the contracts were awarded he would have worked with his legal office and the DFAS to stop payments or reject invoices if warranted. Additionally, if the Government learned after making the award that VECO was not controlled by a service disabled veteran during the bidding process the government could have terminated the contract.

126.    In submitting a bid to obtain this contract, executing the contract, and by submitting three invoices to obtain payment on the contract, defendants knowingly submitted or caused to be submitted false representations that VECO met all of the SBA and FAR requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false representations as to VECO's eligibility for SDVOSB awards, defendants induced the Government to award the contract.

*VA Contract VA701-C-0072*

127.    On May 17, 2010, the VA National Energy Business Center (NEBC) in Seven Hills, Ohio issued solicitation VA-701-10-RA-0060 for installation of a new boiler system at the VA Medical Center in Buffalo, New York as part of the VA's energy conservation program. The solicitation specifically advised that the contract was set aside for SDVOSBs, which meant that the successful bidder needed to meet the VA's regulatory criteria to be an SDVOSB to obtain the contract.  VECO submitted a bid in response to the solicitation.

128.    The NEBC contracting office selected VECO to perform the work after, among

- 27 -

other things, determining that VECO was registered in the VA VIP data base as meeting all of

meeting all of the criteria set forth in the VA regulations to be an SDVOSB.  The contracting

office confirmed this by entering data in the Federal Procurement Data System that VECO was

owned by a Service Disabled Veteran, and recorded that the contract was awarded as an

SDVOSB set-aside.  On September 20, 2010, the office awarded contract VA528-C-0072

through an SDVOSB limited competition.

129.     VECO submitted 49 invoices for payment on contract VA528-C-0072 between

September 20, 2010 and October 21, 2014 and was paid a total of $6,963,634.30 on this contract.

These applications for payment included a certification by the contractor that the contract was

performed in accordance with the terms and conditions of the contract, which included the

requirement that the contract be performed by an SDVOSB.

130.     The contracting officer for contract VA528-C-0072, John Yallech, was not aware

that VECO was not controlled by a service-disabled veteran.  If he had known that VECO did

not meet all of the SBA and FAR requirements to be an SDVOSB because it was not controlled

by a service-disabled veteran, he would have referred the matter to the SBA for an eligibility

determination.  If it was determined that VECO was not eligible he would not have awarded

contract to VECO.  If he had obtained credible information after an SDVOSB set-aside contract

was awarded to a company that was not eligible at time of award, the Government would

conduct an investigation, and in consultation with the VA Office of General Counsel, would

proceed to terminate the contract.

131.     In submitting a bid to obtain contract VA528-C-0072, executing the contract, and

by submitting 49 invoices to obtain payment on the contract, defendants knowingly submitted or

caused to be submitted false representations that VECO met all of the SBA and FAR

requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false representations as to VECO's eligibility for SDVOSB awards, defendants induced the Government to award the contract.

*VA Contract VA528-RA-0746*

132.    In or about April of 2010, the contracting office for the VA Medical Center in Buffalo issued solicitation VA-528-10-RA-0082 for the replacement of a roof at the Center.  The solicitation specifically advised that the contract was set aside for SDVOSBs, which meant that the successful bidder needed to meet the criteria to be an SDVOSB to obtain the contract. VECO submitted a bid in response to the solicitation.

133.    The VA Medical Center contracting office selected VECO to perform the work after, among other things, determining that VECO was registered in VIP database as meeting all of meeting all of the criteria set forth in the VA regulations to be an SDVOSB.  The contracting office confirmed this by entering data in the Federal Procurement Data System that VECO was owned by a Service Disabled Veteran, and recorded that the contract was awarded as an SDVOSB set-aside.  On June 1, 2010, the office awarded contract VA528-RA-0746 to VECO through an SDVOSB limited competition.

134.    VECO submitted 7 invoices for payment on contract VA528-RA-0746 between May 6, 2010 and February 26, 2011 and was paid a total of $1,318,507.10 on this contract. These applications for payment included a certification by the contractor that the contract was performed in accordance with the terms and conditions of the contract, which included the requirement that the contract be performed by an SDVOSB.

135.    The contracting officer for contract VA528-RA-0746, Jonathan Aikin, was not aware that VECO was not controlled by a service-disabled veteran.  If he had he known this

information, he would have referred the matter to the SBA for an eligibility determination.  If it was determined that VECO was not eligible he would not have awarded contract to VECO.  If he obtained knowledge that a contractor, awarded an SDVOSB set-aside contract, was not eligible at the time of award, he would have referred the matter to the VA Office of Inspector General and determined whether the contract should be terminated.

136.   In submitting a bid to obtain contract VA528-RA-0746, executing the contract, and by submitting seven invoices to obtain payment on the contract, defendants knowingly submitted or caused to be submitted false representations that VECO met all of the SBA and FAR requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false representations as to VECO's eligibility for SDVOSB awards, defendants induced the Government to award the contract.

*VA Contract VA528-C-0715*

137.   In or about March 2010, the contracting office at the VA Medical Center in Canandaigua, New York issued solicitation VA-528-10-RP-0082 for the installation of an emergency notification alarm system.  The solicitation specifically advised that the contract was set aside for SDVOSBs, which meant that the successful bidder needed to meet the criteria to be an SDVOSB to obtain the contract.  VECO submitted a bid in response to the solicitation, acknowledging that the contract would be set-aside for SDVOSBs and representing that VECO was eligible for the award.

138.   The Canandaigua contracting office selected VECO to perform the work after, among other things, determining that VECO was registered in the VIP database as meeting all of meeting all of the criteria set forth in the VA regulations to be an SDVOSB.  The contracting office confirmed this by entering data in the Federal Procurement Data System that VECO was

owned by a Service Disabled Veteran, and recorded that the contract was awarded as an

SDVOSB set-aside.  On May 5, 2010, the office awarded contract VA528-C-0715 to VECO

through an SDVOSB limited competition.

139.    VECO submitted six invoices for payment on contract VA528-C-0715 between

June 1, 2010 and February 20, 2014 and was paid a total of $238,078.69 on this contract.  These

applications for payment included a certification by the contractor that the contract was

performed in accordance with the terms and conditions of the contract, which included the

requirement that the contract be performed by an SDVOSB.

140.    The contracting officer for contract VA528-C-0715, Robert Lee, XXXX would

check the VA VIP database to determine if a company had been determined to be an SDVOSB

and could not have awarded the contract to VECO if it was not in the database.  Further Mr. Lee

advised that if he learned after awarding an SDVOSB set-aside contract that a company had not

been eligible at the time of award he would have contacted the SBA Office of Inspector General

and his supervisor, and that if it was determined that the company was not eligible at the time of

award and he was given approval to terminate the contract he would have proceeded with the

termination action.

141.    In submitting a bid to obtain contract VA528-C-0715, executing the contract, and

by submitting six invoices to obtain payment on the contract, defendants knowingly submitted or

caused to be submitted false representations that VECO met all of the SBA and FAR

requirements to be an SDVOSB and was eligible to obtain this contract.  Further, through false

representations as to VECO's eligibility for SDVOSB awards, defendants induced the

Government to award the contract.

*Other Contracts*

142.    The contracts discussed above are representative of the contracts as to which

defendants knowingly submitted false claims or false statements material to claims, or caused

such false claims or statements to be submitted.  Other contracts that were could not have been

awarded to a company that did not meet the requirements to be an SDVOSB, and that would

have been subject to the same termination procedures discussed above, include:

| Contract No. | Award Date | SDVOSB Sole Source (SS) or Limited Competition (LC) | Number of Invoices | Amount Paid On Contracts |
|---|---|---|---|---|
| VA243C0037 | 9/6/2007 | SDVOSB - SS | 6 | $1,293,477.15 |
| VA528C0329 | 4/16/2008 | SDVOSB - LC | 8 | $901,167.69 |
| VA528C0332 | 4/29/2008 | SDVOSB - SS | 7 | $346,808.41 |
| VA528C0346 | 6/24/2008 | SDVOSB - SS | 15 | $1,555,892.18 |
| VA528C0347 | 6/19/2008 | SDVOSB - SS | 4 | $188,744 |
| VA528C0427 | 4/28/2009 | SDVOSB - SS | 5 | $172,541 |
| VA528C0428 | 4/28/2009 | SDVOSB - SS | 7 | $1,213,620 |
| VA528C0528 | 2/13/2009 | SDVOSB - SS | 3 | $357,940 |
| VA528C0566 | 5/22/2009 | SDVOSB - SS | 7 | $706,331.22 |
| VA528C0568 | 6/12/2009 | SDVOSB - LC | 3 | $606,437.50 |
| VA528C0574 | 6/26/2009 | SDVOSB - SS | 8 | $1,184,409.69 |
| VA528C0587 | 8/18/2009 | SDVOSB - LC | 6 | $258,582.97 |
| VA528C0752 | 5/28/2010 | SDVOSB - LC | 4 | $169,759.28 |
| VA528C0753 | 6/1/2010 | SDVOSB - LC | 16 | $1,606,424.32 |
| VA528C0761 | 6/22/2010 | SDVOSB - LC | 13 | $1,145,501.34 |

For the contracts listed immediately above that the VA awarded prior to January 7, 2010, VECO

was required to self-certify that it met the VA eligibility requirements to be an SDVOSB using a

certification process similar to section 52.212-3 of the FAR; the VA CVE only began

determining contractor eligibility in or around January 2010.  VECO also performed a number of

other contracts awarded by the Army and the VA that were set aside for SDVOSBs, and received

payment on the contracts in amounts that were less than $150,000.

143.    Defendants submitted or caused to be submitted false claims and false statements

material to claims that VECO met all of the VA or SBA requirements to be an SDVOSB and was eligible to obtain the contracts identified above.  These included false certifications when VECO certified in online governmental databases, as required by the FAR, that it was eligible as an SDVOSB and when VECO certified its eligibility for SDVOSB set-aside contracts to the CVE. Additional false representations took place when the VA questioned VECO's eligibility and VECO responded with false information regarding its eligibility.

144.     In addition, the solicitation that the Government issued for each of the contracts identified above clearly stated that the contracts were only available to companies that met all SDVOSB criteria, and the contract that VECO signed also included terms and conditions that the contract was an SDVOSB set-aside contract.  In submitting bids to obtain these contracts and entering into these contracts, defendants knowingly submitted or caused to be submitted false claims and false statements material to claims that VECO met all of the VA or SBA requirements to be an SDVOSB and was eligible to obtain these contracts.

145.     Further, the invoice applications that were submitted in order to obtain payment on the contracts identified above included certifications that the contracts were being performed in accordance with the terms and conditions of the contract, which required performance of the contract by an eligible SDVOSB.  In submitting bids to obtain these contracts and entering into these contracts, defendants submitted or caused to be submitted false claims and false statements material to claims that VECO met all of the VA or SBA requirements to be an SDVOSB and was eligible to obtain these contracts.

146.     Therefore, the Government made the payments of more than $21.4 million SDVOSB set-aside contracts identified above as a result of the defendant's alleged misconduct, *i.e.*, the false SDVOSB certifications, and would not have awarded the set-aside contracts to

VECO – or made payments under those contracts – but for VECO's false certifications that it was an SDVOSB.

147.    Moreover, defendants knowingly submitted or caused the submission of false claims or statements material to claims when they fraudulently induced the United States to award the contracts identified above based upon the false certifications and representations that VECO met all of the VA or SBA requirements to be an SDVOSB and was eligible to obtain these contracts.  Accordingly, all invoices or claims for payment submitted under these fraudulently obtained contracts are false or fraudulent claims within the meaning of 31 U.S.C. Section 3729, each of these invoices or requests for payments are separate false or fraudulent claims under the FCA.

148.    The false certifications and statements that VECO met all of the VA or SBA requirements to be an SDVOSB and was eligible to obtain the contracts identified above were material to the United States' payments of claims to VECO on these contracts.  VECO's eligibility to obtain these contracts was conditioned on its compliance with the VA and SBA requirements, including the requirement that the company was owned and controlled by a service-disabled veteran.  As all of these contracts were expressly reserved for and restricted to SDVOSBs, a company that did not meet all SDVOSB requirements was not eligible to obtain the award of these contracts, and was not entitled to payment on any of these contracts.  Further, as discussed above, the contracting officers on these contracts would not have awarded the contracts to VECO had they known that VECO did not comply with these requirements.

149.    Additionally, the invoice applications that VECO submitted to obtain payments on the contracts identified above contained certifications by the contractor that the contract was being performed in accordance with the terms and conditions of the contract.  This included the

contractual requirement that the contract could only be awarded to and performed by an eligible SDVOSB.  As discussed above, if the contracting officers on these contracts known that VECO did not meet the VA or SBA requirements to be an SDVOSB, they would have referred the matter to the appropriate investigatory office and consulted with agency counsel on terminating the contract.

150.    As further evidence of the materiality of the false certifications and statements that VECO met the VA or SBA requirements to be an SDVOSB, the Government has regularly prosecuted, both criminally and civilly, parties that fraudulently obtain SDVOSB set-aside contracts as reported in federal Office of Inspector General (OIG) reports to Congress.  *See, e.g.,* General Services Administration OIG Semiannual Report to Congress (Oct. 1, 2016-March 31, 2017) at 35, available at https://www.gsaig.gov/sites/default/files/semiannual-reports/GSA-OIG-SAR-05-2017.pdf (contractor sentenced to 30 months' imprisonment and forfeiture of over $6.7 million for fraudulently representing himself and his company as a SDVOSB contractor); SBA OIG Semiannual Report to Congress Fall 2017 (Apr. 1, 2017- Sept. 30, 2017) at 14, available at https://www.sba.gov/sites/default/files/oig/SBA_OIG_Fall_2017_SAR.pdf (over $3 million settlement resolution where SDVOSB served as a pass-through for an ineligible company); SBA OIG Semiannual Report to Congress Fall 2016 (Apr. 1, 2016-Sept. 30, 2016) at 12, available at https://www.sba.gov/sites/default/files/oig/SAR_Fall_2016_Publication_Draft_-_508.2.pdf (69 months' imprisonment and forfeiture of nearly $1.3 million against Texas man who used father's identity to qualify for SDVOSB designation); VA OIG Semiannual Report to Congress Issue 75 (Oct. 1, 2015-March 31, 2016) at 43, available at https://www.va.gov/oig/pubs/sars/vaoig-sar-2016-1.pdf ($5 million settlement against corporation that misused warehouse manager's status as a disabled veteran to obtain SDVOSB contracts); VA OIG Semiannual Report Issue 72 (Apr.

1-Sept. 30, 2014) at 56, available at https://www.va.gov/oig/pubs/sars/VAOIG-SAR-2014-2.pdf (discussing multiple SDVOSB cases including one in which $3.9 million was seized and another where a construction company owner received 57 months' sentence and forfeiture order of $1.1 million); SBA OIG Semiannual Report to Congress Fall 2014 (April 1, 2014 – Sept. 30, 2014) at 11, available at https://www.sba.gov/oig/semi-annual-report-congress-fall-2014 (guilty plea to fraud for making false statements regarding SDVOSB eligibility to obtain $7.4 million in SDVOSB set-aside contracts); SBA OIG Semiannual Report to Congress Fall 2013 (Apr.1-Sept. Sept. 30, 2013) at 10, available at https://www.sba.gov/content/semi-annual-report-congress-fall-2013-0 (sentencing in criminal prosecution for fraudulently establishing a firm as an SDVO business and receiving over $13.6 million in SDVO set-aside contracts); SBA OIG Semiannual Report to Congress Fall 2012 (Apr.1-Sept. Sept. 30, 2012) at 10, available at https://www.sba.gov/content/semi-annual-report-congress-fall-2012 (owner of construction company pled guilty for fraudulently claiming SDVOSB status to obtain 11 federal government contracts valued at over $6.8 million, which his company otherwise would not have been entitled to receive); SBA OIG Semiannual Report to Congress Fall 2010 (Apr.1-Sept. Sept. 30, 2010) at 15, available at https://www.sba.gov/content/semiannual-report-congress-fall-2010 (indictment of owner of company for falsely claiming SDVOSB status for his company in obtaining three SDVO set-aside contracts in excess of $10.9 million).

## COUNT I

### Violations of the False Claims Act: Presentation of False Claims

### (31 U.S.C. § 3729(a)(1) (2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A))

151.    The United States incorporates by reference paragraphs 1-189 as if fully set forth in this paragraph.

152.     The United States seeks relief against Defendants under Section 3729(a)(1)

(2006), and, as amended, 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act.

153.     In connection with the foregoing schemes, Defendants knowingly, or with

deliberate ignorance or reckless disregard for the truth, presented and/or caused to be presented

to the Government false or fraudulent claims for payments.

154.     By reason of these false claims, the United States has sustained damages in an

amount to be determined at trial, and is entitled to a civil penalty as required by law for each

violation.

## COUNT II

**Violations of the False Claims Act: Making or Using a False Record or Statement**

**(31 U.S.C. § 3729(2)(2006) and, as amended, 31 U.S.C. § 3729(a)(1)(B))**

155.     The United States incorporates by reference paragraphs 1 - 189 as if fully set forth

in this paragraph.

156.     The United States seeks relief against Defendants under Section 3729(a)(2), and,

as amended, 31 U.S.C. § 3729(a)(1)(B).

157.     In connection with the foregoing schemes, Defendants knowingly, or with

deliberate ignorance or in reckless disregard for the truth, made, used or caused to made and

used, false records and statements material to false and fraudulent claims that were made to the

Government.

158.     Alternatively, to the extent the FCA as it existed prior to its amendment in 2009

applies, as set forth above, in connection with the foregoing schemes, Defendants knowingly, or

with deliberate ignorance or in reckless disregard for the truth, made, used or caused to made and

used, false records and statements to get false and fraudulent claims paid or approved by the

Government.

159.    By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each violation.

**COUNT III**

**Violations of the False Claims Act: Conspiring to Submit or Cause to be Submitted a False Claim or to Make or Use a False Record or Statement**

**(31 U.S.C. § 3729(3)(2006) and, as amended, 31 U.S.C. § 3729(a)(1)(C))**

160.    The United States incorporates by reference paragraphs 1-189 as if fully set forth in this paragraph.

161.    The United States seeks relief against Defendants Lee Strock, Ken Carter and Cynthia Golde under Section 3729(a)(3), and, as amended, 31 U.S.C. § 3729(a)(1)(C).

162.    As set forth above, these Defendants are employees of different corporations. Cynthia Golde, Ken Carter and Lee Strock were officers or employees of VECO, Strock Enterprises, and Strock Contracting.  In connection with the foregoing schemes, Defendants and their co-conspirators knowingly, or with deliberate ignorance or in reckless disregard for the truth conspired to submit or cause to be submitted a false claim, or conspired to make, use or cause to be made or used false records and statements material to false and fraudulent claims that were made to the Government, and took actions to further these conspiracies.

163.    Alternatively, to the extent the FCA as it existed prior to its amendment in 2009 applies, as set forth above, in connection with the foregoing schemes, Defendants conspired to defraud the Government by getting a false or fraudulent claim allowed or paid.

164.    By reason of these false claims, the United States has sustained damages in an amount to be determined at trial, and is entitled to a civil penalty as required by law for each

violation.

## COUNT IV

### Common Law Fraud

165.     The United States incorporates by reference paragraphs 1-189 as if fully set forth in this paragraph.

166.     Defendants made material misrepresentations of fact, with knowledge of, or in reckless disregard of, their truth, in connection with the claims for payment submitted by, or on behalf of, Defendants to the United States.

167.     Defendants intended that the United States rely upon the accuracy of the false representations referenced above.

168.     The United States made substantial payments of money in justifiable reliance upon Defendants' false representations.

169.     Defendants' actions caused the United States to be damaged in a substantial amount to be determined at trial.

## COUNT V

### Unjust Enrichment

170.     The United States incorporates by reference paragraphs 1-189 as if fully set forth in this paragraph.

171.     By reason of the payments to defendants, Defendants were unjustly enriched.  The circumstances of Defendants' receipt of the contracts at issue are such that, in equity and good conscience, Defendants are liable to account for and pay such amounts, which are to be determined at trial.

## COUNT V

### Payment by Mistake

172.     The United States incorporates by reference paragraphs 1-189 as if fully set forth in this paragraph.

173.     Defendants misstatements regarding VECO's eligibility as an SDVOSB caused government officials to make wrongful and incorrect payments on the contracts VECO obtained. The United States is entitled by law to recover these payments.

### PRAYER FOR RELIEF

174.     WHEREFORE, plaintiff, the United States, requests that judgment be entered in its favor and against Defendants as follows:

A.  On the First, Second and Third Claims for Relief (Violations of the False Claims Act, 31 U.S.C. § 3729(a)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B.  On the First, Second and Third Claims for Relief, an award of costs pursuant to 31 U.S.C. § 3729(a);

C.  On the Fourth Claim for Relief (Common Law Fraud), for an amount to be determined at trial, together with costs and interest;

D.  On the Fifth Claim for Relief (Unjust Enrichment), for an accounting and for the amounts by which defendants were unjustly enriched, in an amount to be determined at trial, together with costs and interest;

E.  On the Sixth Claim for Relief (Payment by Mistake), for an amount to be determined at trial, together with costs and interest; and

F.  All other relief this Court deems just and proper, including post-judgment interest and costs of this action.

## DEMAND FOR JURY TRIAL

The United States demands a jury trial in this case.

Respectfully submitted,

Dated:  October 29, 2018

JOSEPH H. HUNT
Assistant Attorney General

JAMES P. KENNEDY
United States Attorney

KATHLEEN A. LYNCH
DANIEL B. MOAR
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
Kathleen.Lynch@usdoj.gov
Tel. (716) 843-5700

BY:    *s/ Glenn P. Harris*
MICHAEL D. GRANSTON
COLIN M. HUNTLEY
GLENN P. HARRIS
U.S. Department of Justice
Civil Division
P.O. Box 261, Ben Franklin Station
Washington, DC  20044
Glenn.P.Harris@usdoj.gov
Tel: 202-305-4207

AT:          Buffalo, New York