UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                           Plaintiff,               Case #15-CV-0887-FPG

v.

                                               DECISION AND ORDER

LEE STROCK, KENNETH CARTER,
CYNTHIA ANN GOLDE, and
STROCK CONTRACTING, INC.,

                           Defendants.

_____

## INTRODUCTION

Plaintiff, the United States of America ("the Government"), files its amended complaint against Defendants alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*., (Counts I, II, III), common law fraud (Count IV), unjust enrichment (Count V), and payment by mistake (Count VI). ECF No. 48. The Government alleges that Defendants knowingly misrepresented that their company, Veteran Enterprises Company, Inc., ("VECO"), qualified as a service-disabled veteran owned small business ("SDVOSB") in order to obtain and profit from construction contracts that were set aside for SDVOSBs.

On January 31, 2018, this Court granted Defendants' motions to dismiss the Government's initial complaint but granted leave to amend. ECF No. 39; *United States v. Strock*, No. 15-CV-0887-FPG, 2018 U.S. Dist. LEXIS 15928, at *1 (W.D.N.Y. Jan. 31, 2018). On October 29, 2018, the Government filed an amended complaint. ECF No. 48. On February 22, 2019, Defendants moved to dismiss the amended complaint, and those motions are now before the Court. ECF Nos. 51, 52, 53, 54. For the reasons stated below, Defendants motions to dismiss are GRANTED.

# BACKGROUND

## I.  The Establishment of VECO

The Government alleges that, before establishing VECO, Defendant Lee Strock owned a construction company—Defendant Strock Contracting, Inc.—that participated in and received millions of dollars in contracts from a Small Business Administration ("SBA") 8(a) program for companies owned by economically and socially disadvantaged individuals.  ECF No. 48 ¶ 28.  But once Strock Contracting "graduated" from this 8(a) program, Strock could no longer use it to obtain federal contracts and began looking for other contracting opportunities.  *Id.* ¶ 29.

He found such an opportunity in SDVOSB programs established by the Small Business Act, the Veterans Benefits Act, and other federal laws which call for certain contracts to be set aside for SDVOSBs only.  *Id.* ¶¶ 16-19; *see generally PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1349 (Fed. Cir. 2018) (describing federal laws enacting SDVOSB programs).  To qualify as an SDVOSB, a business must, among other things, be at least 51% owned by one or more service-disabled veteran(s) who must control the business's day-to-day operations and make strategic policy and long-term decisions for the company.  *Id.* ¶ 18, 26.

Lee Strock decided to recruit a service-disabled veteran to a head a company that he could use to obtain SDVOSB contracts, since Strock himself was not a service-disabled veteran.  *Id.* ¶ 30. To that end, in or around 2006, Strock met with Terry Anderson, whom he knew was a service-disabled veteran, to discuss the formation of an SDVOSB.  *Id.* ¶ 31.  As a result, VECO was formed with Anderson appointed as a "figurehead" President and 51% owner, Strock as Vice President and 30% owner, and Defendant Kenneth Carter as Secretary and 19% owner.  *Id.* ¶ 32.  Defendant Cynthia Golde, who, along with Carter also worked for Strock Contracting, was employed as VECO's office manager.  *Id.* ¶¶ 2, 50.

Though Anderson was VECO's president and majority owner, he played a limited role in managing VECO's day-to-day operations. *Id.* ¶¶ 44-82. Instead, Strock controlled VECO's day-to-day and long-term business operations, and he and Carter performed other key business functions that Anderson did not. *Id*. ¶¶ 69-82. The Government alleges that under Strock's general direction, email accounts were set up in Anderson's name but were used by other VECO personnel to make it appear as if Anderson was sending emails regarding VECO contracts. *Id*. ¶¶ 78-79. In addition to his limited management role, Anderson received limited financial benefits from VECO: he was paid less than 5% of VECO's profits, and, despite his majority ownership, was not the highest paid employee. *Id.* ¶¶ 96, 97.

## II.     SDVOSB Certification and Submission of Bids and Claims

To obtain SDVOSB set-aside contracts, federal regulations require businesses to represent that they qualify as an SDVOSB in their offer on a specific contract. *Id.* ¶¶ 20-23. Some regulations require businesses to "self-certify" that they qualify as SDVOSBs in an online database and update this certification annually, *id.* ¶¶ 20-21, while other regulations related to contracts awarded by the Department of Veterans' Affairs ("VA") require the business to apply to the VA and demonstrate their SDVOSB status to be included in an online database of eligible businesses. *Id.* ¶ 22. Defendants certified that VECO was an SDVOSB. *Id.* ¶¶ 3, 36-39, 41.

Additionally, VECO submitted bids for, and was awarded, numerous SDVOSB contracts. *Id.* ¶¶ 11-42. VECO submitted invoices for payment on these contracts. The invoices included a certification that the contract was performed in accordance with its terms and conditions, which included the requirement that the contract be performed by an SDVOSB. *Id.* ¶¶ 113, 119, 124, 129, 134, 139.

**LEGAL PRINCIPLES**

## I.    The FCA

"The FCA was enacted in 1863 to combat fraud by defense contractors during the Civil War." *Bishop v. Wells Fargo & Co.*, 823 F.3d 35, 43 (2d Cir. 2016) ("*Bishop I*") (citation omitted), *vacated on other grounds*, 137 S. Ct. 1067 (2017). Though it has been amended numerous times, the Act's "focus remains on those who present or directly induce the submission of false or fraudulent claims[,]" and the Act "imposes significant penalties on those who defraud the Government." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995-96 (2016).

## II.    Federal Rule of Civil Procedure 9(b) Standard & the FCA

"It is self-evident that the FCA is an anti-fraud statute" and "claims brought under the FCA fall within the express scope of Rule 9(b)." *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995) (citing Fed. R. Civ. P. 9(b)). Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting Fed. R. Civ. P. 9(b)). "That ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citations and internal quotation marks omitted).

Ultimately, the sufficiency of a complaint under the Rule 9(b) standard "depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice

to the adverse party and enable him to prepare a responsive pleading." *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp. 3d 276, 285 (E.D.N.Y. 2016) (citations omitted).

### III.     Federal Rule of Civil Procedure 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), when a party moves to dismiss a complaint for failure to state a claim upon which relief can be granted, "the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Kane ex rel. United States v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015). However, "this principle is inapplicable to legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *N. Adult Daily*, 205 F. Supp. 3d at 285 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted).

Ultimately, "[a] complaint must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). This requirement is met when a complaint includes "factual content sufficient to allow a court to reasonably infer the defendant's liability." *United States ex rel. Coyne v. Amgen, Inc.*, 229 F. Supp. 3d 159, 168 (E.D.N.Y. 2017) (citing *Twombly*, 550 U.S. at 556).

### DISCUSSION

### I.     The Government's FCA Claims: Counts I, II, and III

In Counts I, II, and III, the Government alleges that Defendants violated the FCA by:

1) presenting, or causing to be presented, false claims in violation of 31 U.S.C. § 3729(a)(1), and, as amended, 31 U.S.C. § 3729(a)(1)(A) (Count I);

2) making or using a false record or statement in violation of 31 U.S.C. § 3729(a)(2), and, as amended, 31 U.S.C. § 3729(a)(1)(B) (Count II); and

3) conspiring to submit or cause to be submitted a false claim or to make or use a false record or statement in violation of 31 U.S.C. § 3729(a)(3), and, as amended, 31 U.S.C. § 3729(a)(1)(C) (Count III).

ECF No. 48 ¶¶ 151-164. The Government alleges these violations occurred from 2008 to 2013.[1]

Subsection (A) imposes liability on any person who "knowingly[2] presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1)(A). To state a claim under subsection (A), a plaintiff must show that the defendant "(1) made a claim, (2) to the United States Government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010), *rev'd on other grounds*, 563 U.S. 401 (2011).

Additionally, an alleged "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." *Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 107 (2d Cir. 2017) ("*Bishop II*") (quoting *Escobar*, 136 S. Ct. at 2002). And, the defendant must know that the requirement is material to the Government's payment decision. *Escobar*, 136 S. Ct. 1996 ("What

---

[1] During that time period, the provisions of the FCA underlying the Government's claims were amended in the Fraud Enforcement and Recovery Act of 2009 ("FERA"), and the Government's amended complaint cites both versions of the statute. The Government's claims arise under FCA subsections (a)(1)(A) (pre-FERA (a)(1)), (a)(1)(B) (pre-FERA (a)(2)), (a)(1)(C) (pre-FERA (a)(3)). FERA's amendments to (a)(1)(A) and (a)(1)(C) were prospective only. *See Kester*, 23 F. Supp. 3d at 251 (citing *United States ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 811 n. 36 (S.D.N.Y. 2010)). Therefore, the pre-amendment subsections apply to any acts committed prior to FERA's effective date of May 20, 2009, and the post-amendment subsections apply to acts committed after that date. Several of the contracts at issue here were awarded prior to May 20, 2009. However, the Court's analysis below is not affected by these amendments. *See United States ex rel. Quartararo v. Catholic Health Sys. of Long Island*, No. 12-CV-4425 (MKB), 2017 U.S. Dist. LEXIS 50696, at *25 (E.D.N.Y. Mar. 31, 2017) ("Although the wording of the sections changed slightly, there was no substantive difference between the 1994 version and the 2009 version of the statute for these sections.") (citing *Bishop I*, 823 F.3d at 43 n. 1).

As for subsection (a)(1)(B), the FERA amendments are applied "to all legal claims pending before a court on or after June 7, 2008. *Kester*, 23 F. Supp. 3d at 251. Since this action was commenced on October 7, 2015, the FERA amendments apply to the Plaintiff's claims under (a)(1)(B). All references to the FCA below refer to the post-FERA amended FCA subsections, unless otherwise noted.

[2] The FCA defines "knowingly" as: (1) possessing actual knowledge; (2) acting in deliberate ignorance of falsity; or (3) acting in reckless disregard of falsity. *Id.* § 3729(b)(1). The FCA explicitly states that it "require[s] no proof of specific intent to defraud." *Id.*

matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.").

Subsection (B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).  To state a claim under subsection (B), "a plaintiff must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim."  *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2017 U.S. Dist. LEXIS 159538, at *23 (S.D.N.Y. Sep. 27, 2017) (quoting *United States ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014)).

"Courts generally treat these two provisions together, as their elements overlap significantly."  *Hussain*, 2017 U.S. Dist. LEXIS 159538, at *23 (citations omitted); *see also Coyne v. Amgen, Inc.*, 717 F. App'x 26, 29 n.2 (2d Cir. 2017) (summary order) (holding that subsection (B) claims failed for the "same lack of materiality" as subsection (A) claims).

Subsection (C) imposes liability on any person who "conspires to commit a violation of subparagraphs (A) [or] (B)."  31 U.S.C. § 3729(a)(1)(A).

The Court will first consider whether the Government has sufficiently pled a violation of sections 3729(a)(1)(A) and (B) as to each Defendant (Counts I and II).  It will then analyze whether the Government has sufficiently alleged that any misrepresentations about VECO's SDVOSB status were material to the Government's decision to pay VECO's claims (Counts I and II). Finally, it will consider whether the Government has adequately plead a claim for conspiracy to violate the FCA (§ 3729(a)(1)(C), Count III).

## A. Sufficiency of the Allegations of Counts I and II as to Each Defendant

### 1. Kenneth Carter

In his motion to dismiss, Carter argues that the Government fails to sufficiently allege the elements of an FCA claim against him. He primarily contends that the Government fails to allege that he knew that any representations as to VECO's SDVOSB status were false. The Court agrees.

"Rule 9(b) permits scienter to be averred generally, but [the Second Circuit has] repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *United States ex rel. Tessler v. City of N.Y.*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (citations and quotation marks omitted) ("*Tessler II*"). "Such an inference may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *United States ex rel. Tessler v. City of N.Y.*, No. 14-CV-6455 (JMF), 2016 U.S. Dist. LEXIS 174013, at *14 (S.D.N.Y. Dec. 16, 2016) (citations and quotation marks omitted) ("*Tessler I*").

Here, the Government generally alleges that "*Defendants* possessed actual knowledge or acted in reckless disregard of the fact that VECO did not meet the criteria to be eligible for SDVOSB set-aside contracts because VECO was under the control of Lee Strock," *id.* ¶ 41, and that "*Defendants* knowingly submitted or caused to be submitted false representations that VECO met all of the . . . requirements to be an SDVOSB." *Id.* ¶¶ 115, 121, 126, 131, 136, 141 (emphasis added); *see also id.* ¶¶ 3, 27. However, these allegations against "Defendants" are insufficient to satisfy Rule 9(b) and withstand a motion to dismiss.

> Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge. In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.

> This can consist of allegations as to who possessed knowledge of the fraud, when and how they obtained that knowledge, or even why they should have known of the fraud.

*Camlin Ltd. v. CMB Additives LLC*, No. 07-CV-4364 (TCP) (GRB), 2012 U.S. Dist. LEXIS 167370, at *7 (E.D.N.Y. Nov. 19, 2012) (quoting *In re DDAVP Direct Purchaser Antitrust Litig*., 585 F.3d 677, 695 (2d Cir. 2009)).

The Government does not make any such allegations with respect to Carter. In fact, in the amended complaint, the Government deletes allegations from the initial complaint that Carter obtained financial benefits from contracts performed by VECO—allegations that might suggest a motive for committing fraud. *See* ECF No. 1 ¶¶ 90, 97.

Nor does the Government allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. For instance, the Government does not allege that Carter knew or should have known the requirements to qualify as an SDVOSB and therefore knew that any representations that VECO qualified as an SDVOSB were in fact false. It does not allege that Carter was personally involved in establishing VECO (other than by providing financial support), and it does not allege that Carter was involved in the process to have VECO recognized as an SDVOSB.

The only allegation against Carter bearing upon his knowledge is that he "knew that Lee Strock controlled the day-to-day and long-term business operations of VECO." *Id.* ¶ 81. But without allegations establishing that Carter knew or should have known that VECO must be controlled by a veteran, this allegation is insufficient. *See United States ex rel. Schagrin v. LDR Indus., LLC*, No. 14 C 9125, 2018 U.S. Dist. LEXIS 197477, at *21 (N.D. Ill. Nov. 20, 2018) (holding that relators' allegation that owner-managers of company "must have known" the claims were false because it would have been "obvious" to anyone in the industry was insufficient without

additional allegations regarding the owner-managers' knowledge and experience in the industry; "[o]therwise, all corporate owner-managers would be liable for False Claims Act violations committed by their companies without regard to the degree of their involvement in the fraudulent scheme."); *cf. United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc*., 892 F.3d 822, 838 (6th Cir. 2018) (finding scienter allegations sufficient where relator alleged that, in response to notice of potential compliance issues, defendants "repeatedly pushed their employees to ignore problems, which they knew might trigger an audit, in a rush to get the claims submitted. In doing so, the defendants acted with 'reckless disregard' as to the truth of their certification of compliance and to whether these requirements were material to the government's decision to pay."); *United States ex rel. Forcier v. Comput. Scis. Corp*., 183 F. Supp. 3d 510, 526 (S.D.N.Y. 2016) (Government adequately plead scienter where it alleged that defendant knew that submitting certain claims would result in denial and that certain practices "likely did not comply" with Medicaid rules).

Even if the Court could infer that Carter knew that VECO did not qualify as an SDVOSB, the Government fails to allege that he knew that VECO's SDVOSB status was material to the Government's decision to pay VECO's claims. This is fatal to the Government's FCA claims. *See Escobar*, 136 S. Ct. 1996 ("What matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."). Accordingly, the Government fails to sufficiently allege an FCA violation against Carter.

### 2. Cynthia Golde

Like Carter, Golde argues that the Government fails to allege that she knew that any representations as to VECO's SDVOSB status were false, and that she knew the false statements were material to the Government's decision to pay VECO's claims.

For the same reasons set forth as to Carter, the Government's group-pled allegations that "Defendants" knew that VECO did not qualify as an SDVOSB are insufficient under Rule 9(b) to state a claim against Golde.

Beyond those group-plead allegations, the Government alleges that Golde knew that Strock controlled the day-to-day operations of VECO, ECF No. 48 ¶ 82, and that she *or other employees* would admit Anderson to the VECO offices since he was not given a key. *Id.* ¶¶ 52-53. It also alleges that, under Strock's general direction, Golde *or other employees* were personally and directly involved in submitting an application to have VECO recognized as an SDVOSB and in updating online databases representing that VECO was an SDVOSB. *Id.* ¶¶ 26, 37-39. Allegations against Golde *or other employees* are insufficient for the same reasons as are the group-plead allegations.

Even putting that defect aside, the allegations against Golde only create an inference that she was possibly familiar with the requirements to qualify as an SDVOSB; they do not "nudge [the Government's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also United States ex rel. Alexander v. Dyncorp., Inc*., 924 F. Supp. 292, 303 (D.D.C. 1996) (noting that FCA plaintiffs need to state facts from which the court can infer a knowing violation on the part of the defendants). The problem with the amended complaint here is similar to that in *United States ex rel. Bender v. N. Am. Telecomms., Inc.,* 686 F. Supp. 2d 46, 51 (D.D.C. 2010), where the complaint failed to allege that the defendant acted knowingly because there were no allegations that the defendant was aware of certain contracting requirements or that the requirements even applied to the defendant.

Another problem with the allegations against Golde is that they fail to describe the exact statements that were contained in the SDVOSB applications and certifications that Golde allegedly

submitted and fail to identify when those applications and certifications were submitted. Without knowing exactly what Golde is alleged to have represented and when, it is difficult to infer that she knew her representations were false. This is why Rule 9(b) requires a fraud complaint to specify the fraudulent statements, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *Chorches* , 865 F.3d at 81.

Similarly, while the Government generally alleges that Golde submitted bids and invoices for SDVOSB contracts, *see* ECF No. 48 ¶¶ 60-62, 109, it fails to identify the specific bids or invoices that Golde submitted. The Government describes six representative contracts in the amended complaint, and between those six contracts, VECO submitted 70 invoices for payment. *See id.* ¶¶ 113, 119, 124, 129, 134, 139. But out of those 70 invoices, the Government only alleges that Golde submitted one. *See id.* ¶ 113. That is insufficient to create a plausible inference that Golde submitted false claims. *See United States ex rel. Branigan v. Bassett Healthcare Network*, 234 F.R.D. 41, 44 (N.D.N.Y. 2005) ("Plaintiff argues that the amended complaint contains representative examples as to each defendant's submission of false claims and thus satisfies Rule 9(b)'s particularity requirements. The examples . . . , however, do not identify which defendant . . . submitted the allegedly fraudulent bill.").

Finally, as with Carter, the amended complaint fails to allege any facts demonstrating that Golde knew that VECO's SDVOSB status was material to the Government's decision to pay VECO's claims. *See Escobar*, 136 S. Ct. 1996. Accordingly, the Government fails to sufficiently allege an FCA violation against Golde.

### 3.  Lee Strock

The allegations against Strock are stronger. The Government casts him as the leader of the fraudulent scheme, the one who decided to establish an SDVOSB to obtain set-aside contracts

after Strock Contracting's SBA 8(a) status expired, and the one who recruited Anderson as the "figurehead" president. As the true manager of VECO, Strock more plausibly could have caused the submission of false certifications and false claims, and indeed, the Government alleges that VECO employees did so under Strock's general direction. *See* ECF No. 48 ¶¶ 36, 39, 62. And the Government alleges more facts that could support an inference that Strock knew that VECO did not qualify as an SDVOSB, such as that Strock gave Anderson a 51% share in VECO (the minimum required for veteran ownership), set up email addresses in Anderson's name to be managed by other employees, and established VECO for his and Strock Contracting's profit.

However, as with Carter and Golde, the Government does not allege that Strock knew that VECO's SDVOSB status was material to the Government's decision to pay VECO's claims. *See Escobar*, 136 S. Ct. 1996 ("What matters is . . . whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."). As this Court stated in its order dismissing the initial complaint:

> Plaintiff does allege several times that Defendants certified or verified that VECO met SDVOSB contracting requirements, "with knowledge" that VECO did not meet such requirements. But that is different than alleging that Defendants had knowledge that Plaintiff, as a matter of course, refuses to pay SDVOSBs because of non-compliance with SDVOSB contracting requirements.

*Strock*, 2018 U.S. Dist. LEXIS 15928, at *26-27. The Government fails to cure that deficiency here. Accordingly, the Government fails to state an FCA claim as to Strock.

### 4. Strock Contracting

The Government includes Strock Contracting as a defendant but makes no allegations against it that are independent from the allegations against Strock, Carter, and Golde. The Government does not allege that Strock Contracting bid on any SDVOSB contracts or submitted

any claims for payment on any such contracts.  Indeed, it was VECO that contracted with the Government.

Rather, the Government ties in Strock Contracting by alleging that it "improperly profited by siphoning money from VECO that had been paid as a result of work it did on the contracts it obtained under false pretenses,"  that VECO and Strock Contracting shared equipment and space and subcontracted work to each other, and that VECO made "questionable" payments to Strock Contracting.  ECF No. 48 ¶¶ 2, 43, 88, 104.

While allegations of financial benefits might help establish a motive to commit fraud, *Tessler I*, 2016 U.S. Dist. LEXIS 174013, at *14, alone, they are insufficient to state a claim against Strock Contracting.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 792 (4th Cir. 1999) ("[T]he language of the False Claims Act statute does not anywhere state that False Claims Act liability depends upon a defendant's status as a recipient or beneficiary of the fraudulently induced contract. All that is required is the submission of a false claim.").  And while the Government argues that Strock Contracting is vicariously liable for the actions of its employees and agents—Strock, Carter, and Golde—because the allegations against them are insufficient to state an FCA claim, the allegations are also insufficient to state a claim against Strock Contracting.

### B.  Materiality (Counts I and II)

In addition to alleging that *Defendants knew* that VECO's SDVOSB status was material to the Government's decision to pay VECO's claims, the Government must also allege facts showing that it did, in fact, consider VECO's SDVOSB status to be material to its decision to pay VECO's claims.

In its order dismissing the initial complaint, the Court held that the Government "assert[ed] that the alleged false certifications or verifications of compliance with SDVOSB status

requirements were material to Plaintiff's decision to award the contracts" but failed to "connect the alleged falsities to Plaintiff's decisions to pay VECO's claims for work performed under those contracts." ECF No. 39, *Strock*, 2018 U.S. Dist. LEXIS 15928, at *28.

Indeed, "[w]here a contractor participates in a certain government program in order to perform the services for which payments are eventually made . . . courts are careful to distinguish between conditions of program participation and conditions of payment." *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc*., 543 F.3d 1211, 1220 (10th Cir. 2008) (citations omitted); *see also United States v. Dialysis Clinic, Inc*., No. 5:09-CV-00710 (NAM/DEP), 2011 U.S. Dist. LEXIS 4862, at *45 (N.D.N.Y. Jan. 19, 2011) ("Conditions of participation . . . are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program. Conditions of payment are those which, if the government knew they were not being followed, might cause it to actually refuse payment.") (citing *Salina*, 543 F.3d at 1220) (internal citation omitted)).

Thus, here, the Government must sufficiently allege that VECO's SDVOSB status was material to its decision to pay VECO's claims, not just its decision to award VECO SDVOSB contracts. *See Escobar*, 136 S. Ct. 1996 ("A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act.").

In *Escobar*, the Supreme Court clarified that the "materiality standard is demanding" because the "False Claims Act is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 2003 (internal citations and quotation marks omitted). Thus, under *Escobar*,

> [a] misrepresentation cannot be deemed material merely because the Government
> designates compliance with a particular statutory, regulatory, or contractual

requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

….

In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003-04; *see also id.* at 2003 n.5 (identifying popular definitions of materiality, including that a misrepresentation is material if it goes to the very essence of the bargain).

Courts have thus summarized the materiality factors under *Escobar* as including: (1) whether the Government expressly identified compliance with the violated provision as a condition of payment, (2) how the Government reacted to the violation or similar violations of which it had actual knowledge, and (3) whether the violation was minor or insubstantial, or whether it went to the very essence of the bargain. *See United States v. Brookdale Senior Living Comtys, Inc.*, 892 F.3d 822, 831 (6th Cir. 2018); *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 701 (S.D.N.Y. 2018); *United States ex rel. Ling v. City of L.A.,* No. CV 11-974 PSG (JCx), 2018 U.S. Dist. LEXIS 136589, at *36 (C.D. Cal. July 25, 2018). The Court will analyze each of these factors in turn.

### 1. Whether the Government Expressly Identified Compliance as a Condition of Payment

Here, the Government does not allege that it expressly conditioned payment to VECO on VECO's compliance with SDVOSB contracting requirements. It does allege that the payment applications VECO submitted contained certifications that the contracts were performed in accordance with their terms and conditions, which included the condition that the contractor qualified as an SDVOSB. *See* ECF No. 48 ¶¶113, 119, 124, 129, 134, 139, 144, 145, 149. But it is not clear from the amended complaint whether the contract terms or the certification on the payment applications explicitly conditioned payment upon VECO's SDVOSB status. Accordingly, this factor does not demonstrate materiality.

### 2. The Government's Reaction to Violations

In the amended complaint, the Government alleges that it "has regularly prosecuted, both criminally and civilly, parties that fraudulently obtain SDVOSB set-aside contracts" and cites nine cases. ECF No. 48 ¶ 150. But not all of those cases appear to be FCA cases, and not every statutory or contractual violation "gives rise to liability" under the FCA. *Escobar*, 136 S. Ct. at 1996, 2004 ("[T]he False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations."). Additionally, Defendants cite evidence to the contrary: a 2009 United States Government Accountability Office report on the SDVOSB program, which found that "although ineligible firms have been identified through bid protests, firms found ineligible do not face real consequences, can be allowed to complete the contracts received, and are not suspended or debarred." *See* GAO Report No. 10-108, Case Studies Show Fraud and Abuse Allowed Ineligible Firms to Obtain Millions of Dollars in Contracts, (Oct. 2009), at 2, available at: https://www.gao.gov/new.items/d10108.pdf (last accessed: September 20, 2019). The Government's citation to a handful of cases it prosecuted—not all under the FCA—does not

sufficiently allege that it "consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Escobar*, 136 S. Ct. at 2004.

With respect to the instant case, in the amended complaint, the Government adds allegations regarding the actions it would have taken with respect to the representative contracts had the Government learned, after awarding them, that VECO did not actually qualify as an SDVOSB. *See* ECF No. 48 ¶¶ 114, 120, 125, 130, 135, 140.

As to the first representative contract, the Government alleges that, had the contracting officer learned that VECO did not qualify as an SDVOSB after awarding the contract, she would have directed the accounting department to stop payments on the contract and could have terminated the contract. ECF No. 48 ¶ 114.

As to the second contract, the Government alleges that, had the contracting officer learned that VECO did not qualify as an SDVOSB after awarding the contract, he would have "suspended the contract, notified the SBA, and requested their assistance, and he would have also sought guidance from WVA Contracting's Legal Office, regarding things such as stopping payment and/or terminating the contracts." *Id.* ¶ 120.

As to the third contract, the Government alleges that the contracting officer would have "worked with his legal office and the DFAS to stop payments or reject invoices if warranted. Additionally, if the Government learned after making the award that VECO was not controlled by a service disabled veteran during the bidding process the government could have terminated the contract." *Id.* ¶ 125.

As to the fourth contract, the Government alleges that the contracting officer would have "conduct[ed] an investigation, and in consultation with the VA Office of General Counsel, would proceed to terminate the contract." *Id.* ¶ 130.

As to the fifth contract, the Government alleges that the contracting officer would have "referred the matter to the VA Office of Inspector General and determined whether the contract should be terminated." *Id.* ¶ 135.

Finally, as to the sixth contract, the Government alleges that the contracting officer would have "contacted the SBA Office of Inspector General and his supervisor, and . . . if it was determined that the company was not eligible at the time of award and he was given approval to terminate the contract he would have proceeded with the termination action." *Id.* ¶ 140.

Defendants argue that these allegations are insufficient because they fail to unequivocally plead that the Government would not have paid VECO had it known that it was not an SDVOSB. *See Escobar*, 136 S. Ct. 2003 ("Nor is it sufficient for a finding of materiality that the Government would have the *option* to decline to pay if it knew of the defendant's noncompliance.") (emphasis added).

Some courts have required unequivocal allegations that the Government would not have paid the claims had it known of the violations. *See United States ex rel. Kelly v. Serco, Inc*., 846 F.3d 325, 334 (9th Cir. 2017) ("[T]he possibility that the government would be entitled to refuse payment if it were aware of [the] alleged violations is insufficient by itself to support a finding of materiality"); *United States v. Somnia, Inc*., No. 1:15-cv-00433-DAD-EPG, 2018 U.S. Dist. LEXIS 17667, at *25-26 (E.D. Cal. Feb. 2, 2018) ("Thus, the question is not whether the government could have withheld payment due to the alleged violation. Instead, in order to sufficiently allege materiality, a plaintiff must plausibly allege that 'in the mine run of cases,' the

government 'would not have paid these claims had it known of these violations.'") (quoting *Escobar*, 136 S. Ct. at 2004); *United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 U.S. Dist. LEXIS 174308, at *18-19 (C.D. Cal. Oct. 5, 2017) (To show materiality, "the complaint must allege that the violations at issue 'are so central . . . that the [Government] would not have paid these claims had it known of these violations.'") (quoting *Escobar*, 136 S. Ct. at 2004); *United States ex rel. Ferris v. Afognak Native Corp*., No. 3:15-CV-0150-HRH, 2016 U.S. Dist. LEXIS 188709, at *9 (D. Alaska Sept. 28, 2016) ("Thus, post-*Escobar*, is it not sufficient for a relator to simply allege that a violation of a statutory requirement is material because that violation may influence the government's decision to pay a claim. The relator must allege some facts that show that the government actually does not pay claims if they involve the statutory violations in question.");

Other courts, however, have held that under *Escobar*, "the misrepresentation does not have to be so grievous that the government would have completely denied payment upon discovering the truth—it is enough that the omission would have affected the government's payment decision." *Hussain*, 2017 U.S. Dist. LEXIS 159538, at *22. *See also Grubea*, 318 F. Supp. 3d at 701 ("Under the natural tendency test, the complaints need only allege that "a reasonable man would attach importance to [the misrepresented information] in determining his choice of action in the transaction.") (quoting *Escobar*, 136 S. Ct. at 2002); *United States ex rel. Hedley v. Abhe & Svoboda, Inc*., 199 F. Supp. 3d 945, 956 (D. Md. 2016) ("[T]he False Claims Act commands only that the false statements be 'capable' of influencing government action."); *United States ex rel. Harrison v. Westinghouse Savannah River Co*., 352 F.3d 908, 916-17 (4th Cir. 2003) (concluding that the materiality analysis focuses on whether a false statement has a "natural tendency" or capability to influence the government's payment decision rather than the actual effect of the false

statement; observing that there could be "instances in which a government entity might choose to continue funding the contract despite earlier wrongdoing by the contractor" because the benefits of doing so would outweigh the costs); *Ling*, 2018 U.S. Dist. LEXIS 136589, at *56-67 ("It is possible to demonstrate materiality even if the Government continued to provide funding despite its knowledge of false certifications, as the First Circuit concluded after *Escobar* was remanded to it. . . . That *must* be the correct interpretation of *Escobar*; if it were not, then materiality would be impossible to demonstrate in cases, like this one, where the Government continues to provide funding when it knows of false certifications because completely withholding the money would have an overwhelmingly deleterious and counterproductive effect.").

The Court finds the latter group of cases more persuasive and "agrees with the proposition that other factors might well influence the Government to continue to provide funding despite knowledge of false claims, such as when the service provided is essential, and that *Escobar* does not completely foreclose a viable FCA claim in such cases." *United States ex rel. Ling v. City of L.A.*, No. CV 11-974 PSG (JCx), 2019 U.S. Dist. LEXIS 121882, at *59 (C.D. Cal. July 15, 2019).

Here, however, the amended complaint does not reference any factors that the Government might have considered to determine whether to pay VECO had it discovered that it was not an SDVOSB, nor does it allege that the Government would have attached importance to VECO's status. *See United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-BLF, 2016 U.S. Dist. LEXIS 93248, at *20 (N.D. Cal. July 18, 2016) (dismissing FCA complaint that "allege[d] in several places that the government would not have paid Defendants' claims if they had known of the fraudulent conduct" but did not "explain why"). Accordingly, this factor does not demonstrate materiality.

### 3. Whether the Violation Was Minor or Insubstantial, or Went to the Essence of the Bargain

The Government does not make any allegations regarding the substantiality of the SDVOSB-status violation or whether it went to the essence of the bargain. On the one hand, the purpose of the SDVOSB programs is to encourage contract awards to SDVOSBs, and this purpose is undermined if the contractor is not, in fact, an SDVOSB. On the other hand, as this Court held in its prior order granting Defendants' motions to dismiss, a misrepresentation is not necessarily material to the Government's *payment decision* just because the Government would not have awarded the contract but for the misrepresentation. *Strock*, 2018 U.S. Dist. LEXIS 15928, at *28. Without more, this factor does not establish materiality. *See United States ex rel. Mateski v. Raytheon Co.*, No. 2:06-cv-03614-ODW(KSx), 2017 U.S. Dist. LEXIS 122685, at *21 (C.D. Cal. Aug. 3, 2017) (holding allegation that United States would not have paid defendant if it knew that defendant had not complied with contractual specifications was "insufficient" because "it does not show how [defendant's] misrepresentations were material").

Because the Government fails to sufficiently allege the elements of an FCA violation against each defendant and fails to sufficiently allege materiality, Counts I and II are DISMISSED.

### C. Conspiracy Allegations (Count III)

A defendant is liable under Section 3729(a)(1)(C) if he "conspires to commit a violation of subparagraph (A) [or] (B)." 31 U.S.C. § 3729(a)(1)(C).

Here, as with the initial complaint, the Government fails to allege that Defendants entered into an unlawful agreement. This fails to satisfy Rule 9(b)'s particularity standard and is fatal to Plaintiff's FCA conspiracy claim. *See Ladas*, 824 F.3d at 27 (affirming dismissal of FCA conspiracy cause of action where plaintiff's complaint "fail[ed] to identify a specific statement where [defendants] agreed to defraud the government.") (citation omitted); *see also United States*

*ex rel. Scharff v. Camelot Counseling*, 13-cv-3791 (PKC), 2016 U.S. Dist. LEXIS 133292, at *28 (S.D.N.Y. Sept. 28, 2016) (finding plaintiff's FCA conspiracy claim "[fell] far short of the pleading requirements of Rule 9(b)" where the "[c]omplaint [made] no allegations as to the existence of any agreement to violate the FCA."). Count III is therefore DISMISSED.

Since Plaintiff's FCA claims under Counts I, II, and III are dismissed in their entirety for all the reasons stated above, the Court need not reach Defendants' other arguments with respect to Plaintiff's FCA claims.

## II. Common Law Fraud, Unjust Enrichment, and Payment by Mistake (Counts IV, V, and VI)

The Government's common law claims fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), and "the decision whether to decline to exercise supplemental jurisdiction is purely discretionary." *Oneida Indian Nation v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc*., 556 U.S. 635, 129 S. Ct. 1862, 1866 (2009)). Because the Court has dismissed the FCA claims over which it had original jurisdiction, the balance of several factors, including judicial economy, convenience, fairness, and comity weigh against this Court's continued exercise of jurisdiction over these claims. *See Carnegie-Mellon Univ. v. Cohil*, 484 U.S. 343, 350 (1988) ("[Where] the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Therefore, the Court declines to exercise jurisdiction over the Government's common law claims and Counts IV, V, and VI are DISMISSED.

### III. Leave to Amend

Defendants argue that the Government's amended complaint should be dismissed with prejudice, citing its failure to sufficiently plead FCA allegations against the Defendants even though it investigated Defendants for years.

However, courts "should freely give leave to amend a complaint when justice so requires." *Williams v. Citigroup Inc*., 659 F.3d 208, 212 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)) (internal quotation marks omitted). This is a "permissive standard" because of a "strong preference for resolving disputes on the merits." *Id*. at 212-13 (citing *N.Y. v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). Here, the Court has only granted leave to amend once and it is not yet clear that further amendment would be futile. Accordingly, the amended complaint is DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 51, 52, 53, 54) are GRANTED and all of Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. If the Government wishes to amend, it shall seek leave to do so through a procedurally-compliant motion filed within 30 days from the date of this order. *See* Local Rule 15(a). Otherwise, this case will be closed without further order.

IT IS SO ORDERED.

Dated: September 23, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court